SQUIRES ET AL., APPELLEES, *v.* SQUIRES, APPELLANT.

(No. CA-328—Decided
September 14, 1983.)

*Baden, Jones, Scheper & Crehan Co.,
L.P.A.,* and *Mr. James G. Robinson,* for
appellees.
*Mr. Thomas L. Crowl, Jr.,* and *Legal
Aid/Society of Dayton,* for appellant.

*Per Curiam.* This cause came on to
be heard upon the appeal from the Court
of Common Pleas of Preble County.

On October 12, 1979, Lora Squires,
one of the appellees herein, filed for a
divorce against James Squires, appellant,
in the Court of Common Pleas, Preble
County, Domestic Relations Division, and
requested custody of the parties'
daughter, Charity Faye Squires, who was
born September 2, 1978.

In late 1980, while the divorce case
was pending, appellee left Ohio with the
child and eventually went to Roane County,
Tennessee with a Mr. Miller. In
December 1980 or January 1981, Mr.
Miller and appellee were arrested by Tennessee
law enforcement officials. As a
result of the arrests, the child came to the
attention of the Tennessee Department of
Human Services. On February 19, 1981,
the Juvenile Court of Roane County found
the child to be severely abused and
declared her to be a dependent and
neglected child. The juvenile court
"ordered, adjudged and decreed that
custody of Charity Faye Squires, date of
birth 9-2-78 be and hereby is continued in
the State of Tennessee, Department of
Human Services with said Department to
have the continuing authority to consent
to any necessary medical, surgical, or
hospital care, pending further orders
herein."

In March 1981, appellant, who was
unaware of the whereabouts of the child,
filed for a writ of habeas corpus in the
Preble County Juvenile Court. The
juvenile court denied the writ on the
ground that the issue of custody was
before the Court of Common Pleas of
Preble County, Domestic Relations Division.

We are unable to ascertain from the
record or the briefs exactly when the child
was returned to Ohio. Apparently, the
Tennessee Department of Human Services
approved placement with the Preble
County Children Services Board and the
child was returned to Preble County in
August 1981 pursuant to the Interstate
Compact Act (R.C. 5103.20; Tenn. Code
Ann. Ch. 8, Section 37-801) and the
Uniform Child Custody Jurisdiction Act
(hereinafter "UCCJA") (R.C. 3109.21 *et
seq.*; Tenn. Code Ann. Ch. 13, Section
36-1301 *et seq.*).

The uncontradicted testimony of Mr.
Swank, Executive Secretary of the Preble
County Children Services Board, was that
the children services board was to be the
custodian and supervisor of the child for
Tennessee and that pursuant to an agreement
with Tennessee, the child was
placed in a foster home and in December
1981 with the maternal grandparents.

In April 1982, the Preble County
Domestic Relations Division granted the
divorce but continued the issue of
custody. During a visit with the child on
June 6, 1982, appellant took the child to
Montgomery County. According to the
uncontradicted testimony of the supervisor
of the generic unit of the Montgomery
County Children Services Board,
in April or May 1981, Tennessee requested
that a home study be done by the
Montgomery County Children Services
Board. The worker who did the home
study sent her report to the Ohio State Interstate
Compact Department in June or
July 1981.

An approved placement of the child with appellant was made by the Tennessee Department of Human Services and the Montgomery County Children Services Board. The placement by Tennessee appears to be temporary custody.

The Preble County Domestic Relations Division held a custody hearing on July 16, 1982. The domestic relations division, in its judgment entry, stated that "* * * it has no jurisdiction to determine custody * * * said child is now within the jurisdiction of Juvenile Court in Roane County, State of Tennessee, and pursuant to requirement of Uniform Child Custody Jurisdiction Act which has been codified by ORC 3109.31 etc."

On July 22, 1982, the appellee filed a petition for determination of custody with the Preble County Court of Common Pleas, Juvenile Division. The appellant filed a special appearance challenging the jurisdiction of the Preble County Juvenile Division. By a judgment entry dated August 17, 1982, the juvenile division judge overruled the motion.

The Preble County Juvenile Division held a hearing on the issue of custody on November 8, 1982. Appellant again revived his motion objecting to the jurisdiction of the Preble County Juvenile Division. Said motion was again overruled. The juvenile division issued its finding on December 14, 1982, and placed legal custody of the child with the maternal grandparents.

The appellant filed a motion for a stay of the judgment with the juvenile division. The juvenile division denied the motion. The appellant filed a timely notice of appeal to this court from the judgment of the trial court awarding custody to the maternal grandparents. The appellant filed a motion for stay with this court. After a hearing, we granted the stay.

Appellant presents five assignments of error for review as follows:

"1. The trial court erred when it determined it had jurisdiction over a subject minor who was the ward of another state.

"2. The juvenile trial court erred in finding jurisdiction in the state of Ohio where the domestic relations court had previously decided to the contrary.

"3. The juvenile trial court erred in proceeding over objection to find proper venue in itself where the child and the father resided in another county at the time of filing.

"4. The trial court erred in proceeding, over objection, without the neglect and dependency hearing transcript required by O.R.C. Section 3109.36.

"5. The juvenile trial court erred in awarding custody to the maternal grandparents where no present finding of unfitness of the natural father was found."

We will address appellant's third assignment of error first because if venue was not proper, the other assignments of error need not be resolved by this court.

Appellant's and appellees' briefs refer to the Rules of Civil Procedure. However, the Ohio Rules of Juvenile Procedure are the applicable rules. Juv. R. 1 states, in part:

"(A) Applicability. These rules prescribe the procedure to be followed in all juvenile courts of this state in all proceedings coming within the jurisdiction of such courts, with the exceptions stated in subdivision (C).

"* * *"

The proceeding took place in a juvenile court and none of the exceptions applies; therefore, the Ohio Rules of Juvenile Procedure are applicable.

Juv. R. 11 governs venue. Juv. R. 11(A), in essence, states that if the child resides in one county and the proceeding is commenced in another county, the transfer is optional. Therefore, it was not mandatory that the proceeding be held in Montgomery County as contended by the appellant.

The trial court did not abuse its discretion in not transferring the proceeding to Montgomery County. The two counties are in close proximity and no undue hardship was imposed upon the appellant. Furthermore, at least two of the

parties who requested custody resided in Preble County. Preble County had as much access to all the pertinent information as did Montgomery County. The third assignment of error is hereby overruled.

For the sake of brevity and clarity, we shall address the first and second assignments of error together.

At the custody hearing on November 8, 1982, the juvenile division stated that the appellant's motion contesting the jurisdiction of the juvenile court was overruled on the basis that "* * * the State of Tennessee has not adopted the Uniform Child Custody Act and the restrictions under 3109.31 *et seq.* would not apply." The juvenile division's conclusion was erroneous.

Tennessee has adopted the Interstate Compact Act (Tenn. Code Ann. Ch. 8, Section 37-801) and the UCCJA (Tenn. Code Ann. Ch. 13, Section 36-1301 *et seq.*). The Tennessee statutory provisions, Tenn. Code Ann. Ch. 13, Section 36-1301 *et seq.*, for acquiring jurisdiction are substantially in accordance with the Ohio statutory provisions for acquiring jurisdiction of the child, R.C. 3109.21 to 3109.36. Therefore, pursuant to R.C. 3109.30(B):

"The courts of this state shall recognize and enforce an initial or modification decree of a court of another state if that court assumed jurisdiction under statutory provisions substantially in accordance with sections 3109.21 to 3109.36 of the Revised Code or if the decree was made under factual circumstances meeting the jurisdictional standards of sections 3109.21 to 3109.36 of the Revised Code, so long as the decree has not been modified in accordance with jurisdictional standards substantially similar to those of these sections."

A custody decree or custody determination that is entitled to recognition in this state includes a finding of child neglect and dependency by another state's court. R.C. 3109.21(B), (C) and (D).

The Ohio Interstate Compact on Placement of Children (R.C. 5103.20) and the Tennessee Interstate Compact on Juveniles (Tenn. Code Ann. Ch. 8, Section 37-801) have been enacted in substantially similar form. Ohio has, therefore, entered into the interstate compact agreement with Tennessee. See R.C. 5103.20.

The next issue that we must address is whether and to what extent the Preble County Juvenile Division was bound by the Preble County Domestic Relations Division's determination that Tennessee had jurisdiction. The question regarding Tennessee's jurisdiction was fully litigated and decided by the domestic relations division seven days prior to the date that the appellee filed for custody in the juvenile division.

The doctrines of *res judicata* and collateral estoppel state that:

"A point or a fact which was actually and directly in issue in a former action and was there passed upon and determined by a court of competent jurisdiction may not be drawn in question in any future action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Norwood* v. *McDonald* (1943), 142 Ohio St. 299 [27 O.O. 240], paragraph two of the syllabus. See, also, *Goodson* v. *McDonough Power Equip., Inc.* (1983), 2 Ohio St. 3d 193; *Whitehead* v. *General Telephone Co.* (1969), 20 Ohio St. 2d 108 [49 O.O.2d 435].

We are mindful of the fact that subject matter jurisdiction is the issue involved and that a judgment is void if the court lacked subject matter jurisdiction. However, once the jurisdictional issue has been fully litigated and determined by a court that has authority to pass upon the issue, said determination is *res judicata* in a collateral action and can only be attacked directly by appeal. See *Claxton* v. *Simons* (1963), 174 Ohio St. 333 [22 O.O.2d 386]; *In re White Motor Credit Corp.* (D.C. Ohio 1982), 23 Bankr. 276.

The domestic relations division was a court of competent jurisdiction that had authority to determine the jurisdiction of

Tennessee. The question of Tennessee's jurisdiction was fully litigated. The parties were the same and the identical issue of Tennessee's jurisdiction was involved in both cases. The juvenile division was, therefore, bound by the domestic relations division's determination that Tennessee had acquired proper jurisdiction. The juvenile division was not so bound if facts or evidence was presented that Tennessee had lost or relinquished jurisdiction of the child. No such evidence was presented.

If there were errors in the domestic relations division's determination of jurisdiction, appellee should have appealed the decision as the decision was a final appealable order. Another division of the same court of common pleas is not the proper forum for resolving erroneous decisions.

The trial court in its findings of fact and conclusions of law stated the fact that the appellant had not received notice of the neglect proceeding was an indication that Tennessee did not have jurisdiction. We do not agree. R.C. 3109.23, R.C. 3109.30(A) and Tenn. Code Ann. Ch. 13, Section 36-1313, in essence, state that only parties who are notified are bound by the court's determination. Notice to the father was not a prerequisite of jurisdiction of the child. Furthermore, it appears that appellant has submitted himself to the jurisdiction of Tennessee and will be bound by any order issued by a Tennessee court. Tenn. Code Ann. Ch. 13, Section 36-1306(d).

Appellee and the juvenile division maintain that there was no proper documentation presented to the juvenile division of how and whether Tennessee acquired jurisdiction. As we have previously stated, the juvenile division was bound by the domestic relations division determination and, therefore, documentation was not necessary. However, we note that the juvenile division had the Tennessee order before it. The authenticity of the document was admitted and the order was stamped, signed, and attested as a cer-

tified and correct copy. See *Price* v. *Price* (1982), 4 Ohio App. 3d 217; Evid. R. 902 and 903.

Tenn. Code Ann. Ch. 13, Section 36-1303 sets forth the conditions under which the Tennessee courts can acquire jurisdiction in child custody matters. It is clear from the facts presented by both parties and the Tennessee order that Tennessee *could* exercise jurisdiction over the child under its own statute and under Ohio's statute, *i.e.*, the child neglect and dependency decree was made "under factual circumstances meeting the jurisdictional standards of sections 3109.21 to 3109.36 of the Revised Code." R.C. 3109.30(B). The decree was, therefore, entitled to recognition by this state, *i.e.*, the Preble County Juvenile Division. R.C. 3109.30(B).

We conclude that the juvenile division was incorrect in determining that Tennessee did not have jurisdiction. However, our determination that Tennessee had jurisdiction over the child does not terminate the inquiry by this court because the juvenile division also had jurisdiction of the child by virtue of R.C. 2151.23(A)(2).

R.C. 2151.23(A)(2) states that "[t]he juvenile court has exclusive original jurisdiction under the Revised Code: * * * (2) To determine the custody of any child not a ward of another court of this state." The legislature specifically amended the statute to read "another court of this state" rather than the original wording "another court." The amendment "established a clear rule that the Ohio jurisdictional grant to decide custody cases involving minor children [was] not to be automatically defeated as a matter of local Ohio law merely by reason of the sole fact of the existence of a pre-existing valid foreign decree." *Thompson* v. *McNeely* (1969), 21 Ohio App. 2d 5, 9-10 [50 O.O.2d 9].

At the outset, we note that the appellee properly invoked the juvenile division's jurisdiction. The court allowed the

appellee to amend her complaint to conform to Juv. R. 10 so that appellee could set forth the jurisdictional prerequisites. See R.C. 3109.27; *Pasqualone v. Pasqualone* (1980), 63 Ohio St. 2d 96 [17 O.O.3d 58] (informing the court of custody proceedings pending in other jurisdictions is a mandatory jurisdictional requirement of such an action).

The crucial question now before this court is that inasmuch as there was concurrent jurisdiction, which state's court was the proper forum for the resolution of the issue of the child's custody?

The juvenile division did not resolve this issue before holding the custody hearing. The juvenile court simply stated that Tennessee had not adopted the UCCJA or the Interstate Compact Act. However, the juvenile division, in its findings of fact and conclusions of law, stated that if Tennessee had concurrent jurisdiction with Ohio, "that a Court of this State is the most appropriate forum for the determination of the issue of custody."

"The jurisdictional prerequisites of the [UCCJA] are set forth in R.C. 3109.22 * * *. The Act clearly contemplates that more than one state will meet the aforementioned jurisdictional prerequisites * * *." *In re Guardianship of Wonderly* (1981), 67 Ohio St. 2d 178, at 183-184 [21 O.O.3d 111]. Such a situation is presented in the case at bar.

The UCCJA effectuates the legislative policy of providing for jurisdictional cooperation among the states and to "eliminate the concept of a 'home court' advantage, which operates to the disadvantage of the child." *Wonderly, supra,* at 188. In the case at bar, both states have exercised their jurisdiction with the result sought to be avoided by the UCCJA, *i.e.,* two different determinations of custody, and neither court communicating or cooperating with the other court involved.

R.C. 3109.24(A), (B) and (C) state that:

"(A) A court of this state shall not exercise its jurisdiction, if at the time of filing the petition a custody proceeding concerning the child was pending in a court of another state exercising jurisdiction substantially in conformity with sections 3109.21 to 3109.36 of the Revised Code, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

"(B) Before hearing the petition in a custody proceeding, the court shall examine the pleadings and other information supplied by the parties under section 3109.27 of the Revised Code and shall consult the child custody registry established under division (A) of section 3109.33 of the Revised Code concerning the pendency of custody proceedings with respect to the child in other states. If the court has reason to believe that custody proceedings may be pending in another state, it shall direct an inquiry to the state court administrator or other appropriate official of the other state.

"(C) If a court is informed during the course of a custody proceeding that a custody proceeding concerning the child was pending in a court of another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending for the purpose of litigating the issue in the more appropriate forum and to ensure that information is exchanged in accordance with sections 3109.34 to 3109.36 of the Revised Code. * * *"

As we have stated above, Tennessee exercised jurisdiction substantially in conformity with R.C. 3109.21 to 3109.36. A review of the record shows that the juvenile division, at the very least, had reason to believe custody proceedings were pending in another state, *i.e.,* the appellee specifically stated in her affidavit, under the section requesting information about a custody proceeding in a court of another state, "State of Tennessee, Roane County Juvenile Court, Kingston, Tennessee. In the matter of Charity Faye Squires, on Court petition of dependency and neglect filed against plaintiff"; ap-

pellant, in his memorandum to his motion, answer and cross-petition for determination of custody, stated that he had filed a petition for custody in Tennessee; the domestic relations division's order finding Tennessee had jurisdiction was before the juvenile division as was the Tennessee order that custody of the child was to be continued in Tennessee; and no evidence was presented that Tennessee had ever relinquished custody or jurisdiction.

Therefore, pursuant to R.C. 3109.24 (B) it was mandatory that the juvenile division make an inquiry of Tennessee; and if Tennessee had a custody proceeding pending when the petition was filed, the juvenile division was not to exercise its jurisdiction unless Tennessee stayed its proceeding.

R.C. 3109.24(A) and (C), read and interpreted in conjunction, contemplate: a proceeding pending in another state before this state acquires jurisdiction; communication regarding a proper forum and exchange of information; that a court of this state not exercise its jurisdiction until some cooperation and communication has occurred between the two states; and if another state has already exercised jurisdiction, the court in this state must forbear from exercising its jurisdiction.

As we have stated above, the Preble County Juvenile Division certainly had reason to believe, if not know, that a proceeding was pending in Tennessee. However, the juvenile division made no attempt to find out if there was a proceeding by communicating with Tennessee. Instead, the juvenile division did not follow the dictates of R.C. 3109.24; it exercised its jurisdiction creating the situation that gave rise to the resultant uncertainty regarding the child's custody and future, and the instant appeal.

In analyzing which state should be permitted to exercise its jurisdiction, the child is our primary focus and jurisdiction exists in Ohio only if in the child's best interest. *Wonderly, supra.* We are aware that all parties who wish to have custody of the child reside in Ohio as emphasized

by appellee-mother and the trial court. We are mindful of the fact that the child has been placed in a number of places within approximately one year's time. We are also aware that Tennessee has exercised jurisdiction and maintained supervision of the child from the beginning of its finding of child abuse, neglect and dependency.

It may well be, as contended by the juvenile division and the appellee, that Ohio has optimum access to relevant information. However, we are not confronted with a situation that needs analysis of optimum access. See *Wonderly, supra.* We are confronted with two Tennessee orders issued before appellee filed her petition for custody, *i.e.,* the Tennessee neglect and dependency order and the Tennessee order placing the child with the father. (Appellee does not contest that Tennessee placed the child but only that Tennessee invalidly placed the child.) This state was bound, by virtue of R.C. 3109.30, to enforce the decree or modify it in compliance with R.C. 3109.31, or as we have discussed above, to fulfill its statutory duty to the child to seek information by complying with R.C. 3109.24, 3109.24(B) and 3109.31(B).

It does not serve the child's best interest for the juvenile division to exercise its jurisdiction without consulting with Tennessee or obeying the dictates of the aforementioned statutes, and thereby create the present uncertainty and conflict and require yet another move for the child. It is not in the child's best interest for this state's court to issue a conflicting order after Tennessee's court has rendered an order, or for one division of a court of common pleas in this state to overrule another division of the same court.

There is no evidence that Tennessee has made or will make a decision without the relevant information. Furthermore, if Tennessee has awarded or does award permanent custody, and if said award is believed to be in error, appellee or ap-

pellant is not perpetually bound thereby as he or she can appeal in Tennessee or have the order modified in Ohio in accordance with R.C. 3109.31.

We conclude that the juvenile division improperly exercised its jurisdiction. Therefore, the juvenile division's determination of custody cannot stand and the the custody proceeding must continue in Tennessee. The first and second assignments of error are hereby sustained.

We do not consider it proper to rule on the fourth and fifth assignments of error as the assignments of error are rendered moot by our conclusion that Tennessee should exercise its jurisdiction. We would merely be issuing an advisory opinion. However, if the Tennessee court would decide that an Ohio court may be the proper forum to continue the litigation and the Ohio court (*i.e.*, the juvenile division) does not hold a new hearing, the fourth and fifth assignments of error will no longer be moot and may be proper for this court to consider.

All assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and dismissed.

*Judgment reversed.*

HENDRICKSON, P.J., KOEHLER and JONES, JJ., concur.