IN RE GUARDIANSHIP OF WONDERLY ET AL., MINORS.
[Cite as In re Wonderly (1981), 67 Ohio St. 2d 178.]

(No. 80-1314—Decided July 15, 1981.)

*Messrs. Shaw, Clemens, Williams, Nichol & Korhn, Mr. Erwin L. Clemens* and *Mr. Joseph N. Schmenk,* for appellants.

*Messrs. Weaner, Hutchinson, Zimmerman & Bacon* and *Mr. John E. Zimmerman,* for appellees.

CELEBREZZE, C. J.  The focal point of this case is the legal and emotional battle for custody of Scott and Heidi Wonderly, two members of that ever-proliferating class of individuals known as "interstate children."[4] In addressing the arguments and concerns voiced by both parties, we feel like those ancient sailors trapped between the rock of Scylla and the whirlpool of Charybdis.[5] In arriving at our decision today, we have been guided by, and take note of, the express purposes of the Uniform Child Custody Jurisdiction Act (UCCJA), adopted in Ohio in 1977 and codified at R. C. 3109.21 through R. C. 3109.37, which are, *inter alia,* to avoid jurisdictional competition and conflict with the courts of other states and assure that the state with the optimum access to the relevant facts makes the custody determination, thus protecting the best interests of the child. See UCCJA (9 Uniform Laws Anot. 111); Annotation, 96 A.L.R. 3d 968.

There are three critical issues in this case. The threshold question is whether a guardianship termination proceeding is the functional equivalent of a custody proceeding which could result in a change of custody of the two Wonderly children, thus mandating compliance with Ohio's version of the UCCJA. Secondly, we must determine, based on the statutorily-

---

[4] See Ehrenzweig, The Interstate Child and Uniform Legislation: A Plea for Extralitigious Proceedings, 64 Mich. L. Rev. 1.

[5] See Justice Tobriner's majority opinion in one of the leading interstate child custody cases, *Ferreira* v. *Ferreira* (1973), 9 Cal. 3d 824, 109 Cal. Rptr. 80.

articulated significant contacts of R. C. 3109.22,[6] whether Ohio or Indiana, or, indeed, both states, have jurisdiction of the custody dispute involving Scott and Heidi Wonderly. Finally, assuming, for the moment, concurrent jurisdiction in Ohio and Indiana, we must then determine if the Probate Court abused its discretion in failing to designate itself an inconvenient forum, pursuant to R. C. 3109.25.[7]

---

[6] R. C. 3109.22 provides:

"(A) No court of this state having jurisdiction to determine the custody of a child shall exercise that jurisdiction unless one of the following applies:

"(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

"(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(3) The child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

"(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with division (A)(1), (2), or (3) of this section, or a court in another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

"(B) Except as provided in divisions (A)(3) and (4) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

"(C) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

[7] R. C. 3109.25 provides:

"(A) A court that has jurisdiction to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

"(B) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

"(C) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account, but is not limited to, any of the following factors:

"(1) If another state is or recently was the child's home state;

We conclude, initially, that the Court of Appeals erred in failing to decide that the UCCJA applies in a proceeding to terminate guardianship. Both R. C. 2111.06 [8] and 2111.07 [9] in-

"(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

"(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

"(4) If the parties have agreed on another forum that is no less appropriate.

"(D) Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court for purpose of assuring that jurisdiction is exercised by the more appropriate court and that a forum is available to the parties.

"(E) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions that may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

"(F) The court may decline to exercise its jurisdiction, if a custody determination is incidental to an action for divorce or another proceeding, while retaining jurisdiction over the divorce or other proceeding.

"(G) If it appears to the court that it is clearly an inappropriate forum, it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorney's fees, incurred by other parties or their witnesses. Payment shall be made to the clerk of the court for remittance to the proper party.

"(H) Upon dismissal or stay of proceedings under this section, the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the clerk of the court for forwarding to the appropriate court.

"(I) Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction, the court of this state shall inform the original court of this fact."

[8] R. C. 2111.06 provides:

"If the powers of the person appointed as guardian of a minor or incompetent are not limited by the order of appointment, such person shall be guardian both of the person and estate of the ward. In every instance the court shall appoint the same person as guardian of the person and estate of any such ward, unless in the opinion of the court the interests of the ward will be promoted by the appointment of different persons as guardians of the person and of the estate.

"A guardian of the person of a minor shall be appointed as to a minor having neither father nor mother, or whose parents are unsuitable persons to have the custody and tuition of such minor, or whose interests, in the opinion of the court, will be promoted thereby. A guardian of the person shall have the custody and provide for the maintenance of the ward, and if the ward is a minor, such guardian shall also provide for the education of such ward.

dicate that the guardian shall have custody of the person and estate of a minor. Yet, on the other hand, both a "custody determination," pursuant to R. C. 3109.21(B),[10] and a "custody proceeding," pursuant to R. C. 3109.21(C),[11] require the application of the UCCJA when the custody of a minor is the main issue or one of several issues in the litigation.

Applying the foregoing statutes to the facts at bar, it is immediately evident that, if the Herschbergers are removed as guardians, custody of the children, too, would change since the Herschbergers would no longer have a right to the custody of the Wonderly children. Therefore, the guardianship issue and the custody issues are inextricably intertwined, thus requiring compliance with the UCCJA.

The jurisdictional prerequisites of the Act are set forth in R. C. 3109.22.[12] The appellate court below specifically ruled that an Ohio court should assume jurisdiction, pursuant to R. C. 3109.22(A)(2), since (1) the grandparents, being residents of Ohio, had a significant connection with this state, and (2) there was substantial evidence available in Ohio concerning the children's present and future care, protection, training, and personal relationships. In evaluating the correctness of the appellate court's conclusion, we are mindful of the fact

"Before exercising its jurisdiction to appoint a guardian of a minor, the court shall comply with the jurisdictional standards of sections 3109.21 to 3109.37 of the Revised Code."

[9] R. C. 2111.07 provides:

"Each person appointed guardian of the person and estate of a minor shall have the custody and tuition of his ward and the management of such ward's estate during minority, unless such guardian is removed or discharged from such trust or the guardianship terminates from any of the causes specified in Chapters 2101 to 2131, inclusive, of the Revised Code."

[10] R. C. 3109.21 provides:

"As used in sections 3109.21 to 3109.37 of the Revised Code:
"* * *

"(B) 'Custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights. It does not include a decision relating to child support or any other monetary obligation of any person."

[11] R. C. 3109.21 provides:

"As used in sections 3109.21 to 3109.37 of the Revised Code:

"(C) 'Custody proceeding' includes proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings."

[12] See footnote 6, *supra.*

that the Act clearly contemplates that more than one state will meet the aforementioned jurisdictional prerequisites, as evidenced by the Commissioners' Note to Section 3 of the Act (R. C. 3109.22), which states in part:

"***Paragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact descriptions. *But its purpose is to limit jurisdiction rather than to proliferate it.* The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. *The interest of the child is served when the forum has optimum access to relevant evidence about the child and family.* There must be maximum rather than minimum contact with the state." (Emphasis added in part.) 9 Uniform Laws. Anot., at 124. See, also, *Schlumpf* v. *Superior Court* (1978), 79 Cal. App. 3d 892, 145 Cal. Rptr. 190; *Clark* v. *Superior Court* (1977), 73 Cal. App. 3d 298, 140 Cal. Rptr. 709. See, generally, *Sampsell* v. *Superior Court* (1948), 32 Cal. 2d 763, 197 P. 2d 739 (Traynor, J.).

In reviewing the Ohio connections of the case *sub judice,* we agree with the court below that the residency of the grandparents here is a significant connection. Similarly, the grandparents' presence in Ohio is probative of the future care, protection and personal relationships that the children would encounter if they returned to Ohio in the custody of the grandparents. Of course, the accounts and financial records which the Herschbergers have continued to file with the Probate Court of Defiance County are other connections with Ohio that relate to the care and protection of the children.

On the other hand, though, Indiana, the children's home since 1971, qualifies as their "home state," for purposes of R. C. 3109.21(E)[13] and 3109.22(A)(1). As previously men-

---

[13] R. C. 3109.21 provides:

"As used in sections 3109.21 to 3109.37 of the Revised Code:

"(E) 'Home state' means the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least

tioned, the Herschberger family resides in Indiana. The children's education, personal relationship with their peer group and adults, medical care, and religious training all center in Indiana. Based upon this record, it is clear that, for the purposes of R. C. 3109.22(A)(2), substantial evidence of Scott and Heidi Wonderly's past, present and future care, protection, training, and personal relationships is available in Indiana.

While, as just noted, Indiana has a significant connection to and substantial evidence about the Wonderly children, it is not at all clear to us, based on this record, that the children have a significant connection to and that there is *substantial* evidence available in Ohio pertaining to their present and future well-being. Our difficulty in analyzing the significance and substantiality of the Ohio connections is exacerbated by the trial court's failure to set forth separate findings of fact and conclusions of law, pursuant to the Herschberger's Civ. R. 52 request.[14] Reality and the underlying rationale of the Act compel us to conclude that Ohio's connection with this case has, over the past decade, grown tenuous. Nevertheless, for

---

six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period."

[14] Civ. R. 52 provides:

"When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing or orally in open court requests otherwise before the journal entry of a final order, judgment, or decree has been approved by the court in writing and filed with the clerk of the court for journalization, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.

"When a request for findings of fact and conclusions of law is made, the court, in its discretion, may require any or all of the parties to submit proposed findings of fact and conclusions of law; however, only those findings of fact and conclusions of law made by the court shall form part of the record.

"Findings of fact and conclusions of law required by this rule and by Rule 41(B)(2) are unnecessary upon all other motions including those pursuant to Rule 12, Rule 55 and Rule 56.

"An opinion or memorandum of decision filed in the action prior to judgment entry and containing findings of fact and conclusions of law stated separately shall be sufficient to satisfy the requirements of this rule and Rule 41(B)(2)."

the purposes of our disposition of this case, we will assume, without deciding, that Ohio, as well as Indiana, has jurisdiction in this matter.

Thus, in view of this concurrent jurisdiction, the dispositive issue in this case is whether the trial court should have declared itself an inconvenient forum, pursuant to R. C. 3109.25.[15] In answering this question, we have taken into consideration the Commissioners' Note to Section 7 (R. C. 3109.25) of the Act, as follows: "The purpose of this provision is to encourage judicial restraint in exercising jurisdiction whenever another state appears to be in a better position to determine custody of a child. It serves as a second check on jurisdiction once the test of section 3 or 14 has been met.* * *" 9 Uniform Laws Anot., at 139.

Applying the convenience factors of R. C. 3109.25 to the facts at bar, the conclusion is inescapable that Indiana, not Ohio, is the more convenient and more appropriate state to determine any changes in the custody of the Wonderly children. While both states, concededly, have access, in varying degrees, to relevant evidence, it is our considered judgment that, based on the record as a whole, Indiana is in a much better position to evaluate the salient facts of the children's past, present and future well-being.

The Wonderly children have resided in Indiana with the Herschbergers and their two children as one family unit since 1971, nearly ten years. The Wonderly children refer to the Herschbergers as "mom and dad."[16] Indeed, the Herschbergers, in anticipation of the challenges entailed by their guardianship of the Wonderly children, participated in a child guidance and a parenting class conducted by Homer Kiracofe, a Fort Wayne counselor. The children's education, training, emotional well-being, relationships to schoolmates, playmates and other people in the community, and any adverse impact of a change in their custody can all be more intelligently and more effectively analyzed by an Indiana court. Any evaluation of the physical, moral, emotional and religious environment provided to the children by the Herschbergers in the past and

---

[15] See footnote 7, *supra.*

[16] See footnote 2, *supra.*

present—and a prediction of the future environment—can be more appropriately conducted in Indiana.

This court in *Krupp* v. *Poor* (1970), 24 Ohio St. 2d 123, paragraph two of the syllabus, defined judicial discretion in the following fashion:

"Judicial discretion is the option which a judge may exercise between the doing and not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in light of the particular circumstances of the case." See, also, *Steiner* v. *Custer* (1940), 137 Ohio St. 448.

In view of the foregoing factors and competing considerations in this case, we conclude that the trial court abused its discretion in not dismissing this case, pursuant to R. C. 3109.25, on the theory of an inconvenient forum. See, generally, *Schlumpf* v. *Superior Court, supra; Clark* v. *Superior Court, supra; Hopson* v. *Hopson* (1980), 110 Cal. App. 3d 884, 168 Cal. Rptr. 345; *Larson* v. *Larson* (1980), 5 Kan. App. 2d 301, 615 P. 2d 806.

The history of this case is, in many ways, depressing: two youngsters, orphaned at an early age who are now the pawns in an interstate custody game. It is important to bear in mind, however, that (1) our primary focus is on the children, not on the feuding parties, and (2) the best interests of the children are served when the state which has the optimum access to the relevant information makes the custody determination. See Commissioners' Note to Section 3, *supra.* We purposely avoid rendering an advisory opinion on the relative custodial qualifications of the Herschbergers or the grandparents. That is a decision that can be more appropriately made by a judge "on the scene" in Indiana.

In rendering our judgment today, we are fully cognizant of the following remarks of Justice Fairchild of the Supreme Court of Wisconsin:

" 'I suppose that one of the fundamental difficulties in the situation is that trial judges (if not appellate judges, as well) are somewhat loath to defer to courts of other states. This may be due to a tendency of any individual to think that in a situation demanding the wisdom of Solomon he can come closer

then anyone else. And there is always the suspicion that even a judge will be a little more sympathetic with a constituent.' "[17] However, we have the utmost confidence that our fellow judges in Indiana, in considering the best interests of the Wonderly children, will act compassionately and impartially.

With the adoption of the UCCJA by an increasing number of jurisdictions, the time has come for judicial cooperation among the states. In matters as serious as child custody, all courts should eliminate the concept of a "home court" advantage, which operates to the disadvantage of the child.

While statutes can be amended and case law can be distinguished or overruled, we take judicial notice of the fact that children grow up only once. When a mistake is made in a custody dispute, the harmful effects are irrevocable. To minimize this possibility, the Act emphasizes that the state with the optimum access to the relevant facts should make determinations of this nature. In this case, that state is Indiana.

For all the foregoing reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

W. Brown, P. Brown, Sweeney, Locher, Holmes and C. Brown, JJ., concur.

---

[17] Address by Justice Fairchild of the Supreme Court of Wisconsin, Conference of Chief Justices, Mim. 8 (August 1961), as quoted in Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative Remedy For Children Caught in the Conflict of Laws, 22 Vand. L. Rev. 1207, fn. 15 at 1211.