## In re Spriggs
### [Cite as 2 AOA 209]

*Case No. 89-CA-1803*
*Scioto County, (4th)*
*Decided April 24, 1990*

R.C. 2111.46
R.C. 2505.02
R.C. 3109.04

*Wolery, Price & Hoover, Mr. Mark W. Price, Portsmouth, Ohio, for Appellant.*

*Mr. Richard L. Eisnaugle, Portsmouth, Ohio, for Appellee.*

HARSHA, J.

This matter is on appeal from an order of the Probate Division of the Scioto County Court of Common Pleas terminating the guardianship of Megan Nicole Spriggs. Megan, born July 29, 1981, is the daughter of Jill Spriggs Staggs. Shortly after Megan's birth, Jill and Megan moved in with Megan's maternal grandmother, Maryanne Spriggs, and her aunt, Jamianne Spriggs. Jill and Megan resided there until October 3, 1986, when Jill moved to New Jersey to start a new job with Sea Coast Publications.

A guardianship was established for Megan with Jamianne being appointed guardian. Jill submitted a waiver of notice and consented to the appointment of Jamianne as guardian. The trial court in its findings stated that based on Jill's testimony, Jill never intended to give up permanent custody of her daughter and that the guardianship was a temporary measure until Megan could move out to New Jersey and join Jill or until Jill returned to Ohio.

Appellant's first assignment of error states:

THE JUDGMENT OF THE COURT OF COMMON PLEAS OF SCIOTO COUNTY, PROBATE DIVISION, IS AT WAR WITH SETTLED OHIO LAW.

A. The trial court erroneously held that "[t]his case is not a custody matter ***."

B. The court wrongly concluded that the natural mother's rights were paramount under the facts of this dispute and constituted "good cause" to terminate the guardianship.

In the first portion of this assignment, appellant contends that the probate court erroneously held that "[t]his case is not a custody matter ***." Appellant cites to a number of cases, reported and unreported, as standing for the proposition that "the guardianship issue and the custody issues are inextricably intertwined ***." *In re Wonderly* (1981), 67 Ohio St. 2d 178, 183. The crux of this argument is that when deciding the issue of termination of guardianship, the proper test to be applied is that of "the best interest of the child," set forth in R.C. 3109.04 as opposed to the "good cause" test set forth in R.C. 2111.46. We disagree.

Appellant argues that *Masitto v. Masitto* (1986), 22 Ohio St. 3d 63 requires this court to reverse the probate court's decision terminating guardianship of Megan. In *Masitto*, the Ohio Supreme Court upheld the trial court's use of the "best interest of the child" test enunciated in R.C. 3109.04 as the appropriate test for a change of custody case where the father forfeited his natural rights to custody of his daughter. "Whether or not a parent relinquishes rights to custody is a question of fact which, once determined, will be upheld on appeal if there is some reliable, credible evidence to support the finding." *Id.* Conversely, when the parent has not forfeited his right to custody of his child, the proper test may be "parent's suitability" in a custody dispute between a parent and non-parent. *In re Perales* (1977), 52 Ohio St. 2d 89.

In *Masitto*, the trial court held that the father contracted away custody of his minor child based upon a written agreement appointing the maternal grandparents as guardians in conjunction with a divorce decree.

The *Masitto* court in upholding the trial court held that "[w]here a person accepts the custody of a child by virtue of an agreement with the parents of the child, the contract may be such, and the care and support may be furnished for such a length of time and under such circumstances as to estop the parents from denying that they have relinquished or forfeited their natural right to the custody of the child." *Id.* (citing to *Garcia v. Cardarelli* (App. 1929), 7 Ohio Law Abs. 262, 263).

In the case at hand, the probate court made the specific finding that the natural mother did not forfeit her right to custody of Megan, i.e. that her relinquishment was temporary only. This decision will not be disturbed since reliable, competent evidence was offered which supports this finding. Jill testified that at no time did she intend to permanently give up custody of Megan. She testified that the guardianship was a temporary measure to provide care for Megan until Megan could come to New Jersey or until Jill returned to Ohio. Further, Jill testified that while she was in New Jersey, she returned every other week to spend extended weekends with her daughter. Also, Jill relinquished custody of Megan for a period of only seven months. In *Garcia*, a minor mother was found to have forfeited her natural right to custody when she surrendered her child to blood relatives and took no steps to regain custody for over four years after reaching majority. In *Masitto*, the father allowed a period of over seven years to elapse before attempting to regain the custody of his child when he had placed his child under the care of her maternal grandparents.

The test set forth in *Garcia* and incorporated in *Masitto* is discretionary in that, based upon certain factors and circumstances, a parent may be estopped from exercising their natural right to the custody of a child. In view of the evidence before the probate court, the trial court did not err in determining that Jill did not relinquish her rights to custody.

Given a parent's paramount right to custody under Ohio law, absent clear and convincing evidence to the contrary, a guardianship that does not denominate its term as being either temporary or permanent, should be presumed to be temporary in nature.

Based upon the probate court's finding of fact that Jill did not contract away her rights to custody, the probate court was not required to apply the stringent test of "the best interest of the child" under R.C. 3109.04, *In re Carpenter*

(1987), 41 Ohio App.3d 182, but rather, simply could have applied the "good cause" test of R.C. 2111.46 for termination of guardianship.

However, after reviewing the record and the findings of the probate court, it is readily apparent that the probate court not only issued its decision pursuant to the termination of guardianship language contained in R.C. 2111.46 but also after having considered "the best interest of the child." On pages five through six of the document referenced as Finding of the Court, the court explicitly states:

"4) That in weighing the evidence of the rights and desires of the parent to have her child with her as against any harmful effect that terminating the guardianship and return of the child to her parent may have upon this child, the Court finds it is in *the child's best interest* that she be raised by her parent." (Emphasis added.)

Therefore, we find that the probate court did apply "the best interest of the child" test advocated so strongly by appellant.

While the trial court should have limited its determination to a showing of good cause under R.C. 2111.46, any error in utilizing the best interest standard ran to appellant's benefit. Accordingly, this error is harmless.

While the guardianship issue and custody issues may have been inextricably intertwined in *Wonderly, supra*, we do not read that case as requiring a trial court to utilize the requirements of a change of circumstances and the best interest of the child set forth in R.C. 3109.04(B)(1) when proceeding under R.C. 2111.46 to terminate a temporary guardianship.

Appellant also argues that the probate court erred in finding that the natural mother's rights were paramount in this dispute and constituted "good cause" in terminating the guardianship.

R.C. 2111.46 provides in pertinent part that:

"When a guardian has been appointed for a minor before such minor is over fourteen years of age, such guardian's power shall continue until the ward arrives at the age of majority, *unless removed for good cause* or unless such ward selects another suitable guardian." (Emphasis added.)

In matters pertaining to the care and custody of juveniles, the trial court is given broad discretion. The Eighth District Court of Appeals specifically found that "[t]he decision as to whether good cause for removal [of a guardian] was shown was within the sound

discretion of the trial court." *In re Minor of: Laura Lee Henry* (June 2, 1983), Cuyahoga App. No. 45601, unreported.

In this portion of the first assignment of error, appellant continues to argue that the probate court erred by not applying "the best interest of the child" test. As discussed above the court did apply this test.

Appellant also argues that the probate court improperly terminated the guardianship by finding "good cause" even though the court had held that there was no evidence to show that appellant was not a fit guardian. Appellant cites no case nor can we find a case which requires that before a guardian may be removed for "good cause," the guardian must be shown to be unfit.

Quite to the contrary, the focus need not be upon the guardian's conduct, but properly should be upon good cause, a term which is broad enough to encompass the child's best interest. For instance, consider the situation where a parent is sick and unable to care for a child. Upon agreeing to a guardianship, would that parent have to show unfitness of the guardian to regain custody of the child after the parent returns to health? We think not.

In determining whether "good cause" existed, the court took into consideration the circumstances surrounding the establishment of the guardianship. After reviewing the evidence, the probate court found that the mother chose to establish a guardianship to care for her child while she was out-of-state so that she would not give up any of her parental rights. The mother sought to terminate the guardianship because the original need for the guardianship had ceased and she was ready, willing and able to resume her child's care and custody.

The court finding that the circumstances surrounding the creation of the guardianship had ceased to exist, was not an abuse of discretion and constitutes "good cause" to terminate the guardianship. The court's decision is supported by the record and the detailed explanation of the court's analysis.

Accordingly, appellant's first assignment of error is overruled.

Appellant's second assignment of error states:

THE TRIAL COURT SHOULD NOT HAVE ENTERTAINED APPELLEE'S "MOTION TO RECONSIDER" AND FURTHER AGGRAVATED THE MISTAKE BY IGNORING APPELLANT'S MOTION TO STRIKE.

Appellant argues that is was improper for the trial court to entertain appellee's motion for reconsideration since a motion for reconsideration is a nullity pursuant to Ohio Rules of Civil Procedure and case law. Appellant, in support of his position, cites to *Pitts v. Dept. of Transportation* (1981), 67 Ohio St. 2d 378, 379, wherein the supreme court held: "Interpretation of the Rules of Civil Procedure and practical considerations warrant one determination that motions for reconsideration of a final judgment in the trial court are a nullity. ***"

After review of appellant's cited case law, we find appellant's argument to be not well-taken. A close reading of cited case law reveals that their holdings are inapplicable. The cases stand for the proposition that motions for reconsideration are not allowable in the trial court after a final judgment. The supreme court in *Pitts* specifically held that "[i]nterlocutory orders are subject to motions for reconsideration, whereas judgments and final orders are not. This court is specifically denying motions for reconsideration in the trial court *only after final judgments*." *Id.* at 379, fin. 1. (Emphasis added).

An order on a motion for stay of execution is not a final appealable order and therefore may be subject to a motion for reconsideration. The Franklin County Court of Appeals summarily held that "[t]here is a question as to the appealability of the denial of a stay *** since the action would appear to be interlocutory, rather than a "final order or action ***." *Benton Township v. Williams* (1976), 47 Ohio App. 2 305, 306..

R.C. 2505.02 defines a final order as:

"An order that affects a substantial right in an action which in effect determines the action and prevents a judgment, an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order that vacates or sets aside a judgment or grants a new trial ***.

An order on a motion for stay of execution will not determine the action and prevent a judgment. Obviously, the underlying action (i.e., custody of the minor) had been decided when the motion for stay was filed. The stay, if granted, would not prevent judgment. It would merely postpone the execution of judgment pending appeal to the court of appeals.

The second prong likewise does not render the order final. An order affecting a substantial right made in a special proceeding or upon a summary application in an action after

judgment is a final appealable order. The supreme court in *Amato v. G.M.C.* (1981), 67 Ohio St. 2d 253, employed the following balancing test to determine whether an order is made in a special proceeding: "This test weighs the harm to the 'prompt and orderly disposition of litigation,' and the consequent waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after final judgment is not practical."

The supreme court's "balancing test" makes "appealable any order not disposing of the entire case or a separate portion thereof which so adversely affects the substantial right of a party that there can be no effective review after a final judgment where the demonstration of prejudice would be an insurmountable burden and where the harm to the appealing party outweighs the harm to the prompt and orderly disposition of litigation resulting from immediate appeal." Whiteside, Ohio Appellate Practice T 5.07. In *Bernbaum v. Silverstein* (1980), 62 Ohio St. 2d 445, 447, the supreme court noted that "a prime determinant of whether a particular order is one made in a special proceeding is the practicability of appeal after final judgment. A ruling which implicates a claim of right that would be irreparably lost if its review need await final judgment is likely to be deemed a final order."

An order on a motion for stay of execution does not meet the *Amato* requirements for a special proceeding. The prime balancing factor is "the need for immediate review because appeal after final judgment is not practicable." There is no overriding need to characterize a stay of execution as a special proceeding since any judgment rendered on such a motion as a matter of course will be reviewed with the underlying final judgment from which relief of execution is sought. Also, pursuant to the mandates of App. R. 7(A), once relief has been denied by the trial court, the court of appeals may entertain a motion for a stay of execution. Appellant properly applied to the trial court for a stay and was rejected. Appellant, then, proceeded to this appellate court where, likewise, her motion for a stay was rejected. In effect, appellant is given two opportunities to contest the trial court's refusal to grant a stay of execution.

Here, the final judgment terminating the guardianship has been rendered. An appeal has been filed. A motion for stay of execution likewise has been filed. The judgment on the motion is not a final order under the standard definition, nor is there any basis for finding that it is an order made in a special proceeding. The order is merely an interlocutory order which is appealable with the underlying final judgment. Prompt and orderly disposition of litigation is realized without causing appellant to irreparably lose a claim of right.

Therefore, we find that an order on a stay of execution in a custody matter does not constitute a final order. Pursuant to the intention of the supreme court, *Pitts* only denys motions for reconsideration in the trial court after a final order has been rendered. Interlocutory orders are subject to motions for reconsideration. The trial court had jurisdiction to entertain appellee's motion for reconsideration. Appellant's second assignment of error is overruled.

We would note that even if the trial court had committed error by entertaining a motion for reconsideration of its original order staying execution, the error would have been merely harmless error. Pursuant to Civ. R. 61, "no error or defect in any ruling or order or in anything done or omitted by the court *** is grounds *** for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." Here, the trial court rendered judgment in favor of appellee and denied a stay of execution on the basis that the child at the time of judgment was living with appellee. The court held that an order affirming the stay was not well taken since it would result in further disruption to the child's home life. On appeal, we have affirmed the trial court's decision on the merits of the case. Therefore, "substantial justice" would require the child to stay with the natural mother as ordered by the trial court.

In appellant's third assignment of error, she contends:

THE TRIAL COURT ACTED WITHOUT LEGAL AUTHORITY BY HOLDING A HEARING ON APPELLANT'S RIGHT TO A STAY OF EXECUTION AND BY CLAIMING HE HAD "DISCRETION" TO GRANT A STAY OF EXECUTION.

Appellant filed his motion for stay pursuant to Civ. R. 62(B). This case involves a termination of guardianship issue which although not a custody issue pursuant to R.C. 3109.04 still results in a custody order. Pursuant to Civ. R. 75(G), "Rule 62(B) does not apply to custody, alimony or support orders." In

*Buckles v. Buckles* (March 29, 1988), Franklin App. No. 87 AP-824, the appellate court construed Civ. R. 75(G) and held that determination of a stay in such instances is within the sound discretion of the trial court. Appellant's argument is that the trial court lacked discretion in granting or denying a motion for stay of execution and "usurp[ed] his authority, claiming he had jurisdiction, and then interfering with the guardian's right to a stay of execution." Appellant argues that pursuant to Civ. R. 62(B), a stay of execution is mandatory.

We find that pursuant to Civ. R. 75(G) and *Buckles*, it was within the sound discretion of the trial court to grant or deny the stay of execution. Accordingly, appellant's third assignment of error is overruled.

It is ordered that Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas, to carry this judgment into execution.

Any Stay previously granted by this Court is hereby terminated as of the date of filing of this Entry.

A certified copy of this Entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

*Judgment affirmed.*

GREY, J., Concurs in Judgment and Opinion.
ABELE, J., Concurs in Judgment and Opinion.