OPINION
This is an accelerated appeal taken from a final judgment of the Probate Division of the Lake County Court of Common Pleas. Appellants, Clarence Joles and Nancy Joles, appeal from the probate court's judgment terminating their guardianship of their grandchild, Jeremy Joseph Joles.
On March 15, 1987, appellee, Michelle Joles, gave birth to a son, to wit: Jeremy Joseph Joles ("Jeremy"). Appellee was married to Christopher Joles, Jeremy's natural father, when the child was born. Christopher Joles is also appellants' son, thereby making appellants the paternal grandparents of Jeremy.
By April of 1989, Jeremy began to reside with appellants. This living arrangement continued on an informal basis for several years. In August of 1992, however, appellants filed an application in the probate court requesting that they be appointed as co-guardians of Jeremy. In the application, appellants stated that the establishment of the guardianship was necessary because Jeremy's parents were unsuitable persons who had abandoned the child to the care of his grandparents. The guardianship for which appellants applied was non-limited in nature and over the person only.
Accompanying the application for guardianship was a "List and Waiver of Next of Kin" on which Christopher Joles and appellee were listed as Jeremy's natural father and mother, respectively. Christopher Joles signed this document indicating that he consented to the appointment of his parents as Jeremy's legal guardians and that he waived service of notice of the application and hearing. Appellee, however, never signed this document, and her address was listed as unknown. In addition, Christopher Joles submitted an attached letter in which he stated that he did not know where appellee was residing. As a result, appellee was never notified of the pending guardianship application.
The probate court conducted a hearing on the application on September 11, 1992, at which time the court issued a judgment entry appointing appellants as co-guardians of Jeremy's person. The probate court also issued letters of guardianship as required by law.
The guardianship arrangement remained essentially unchanged for the next five years. During this interval, Christopher Joles exercised sporadic visitation with Jeremy pursuant to appellants' consent, but appellee had no contact with her son. Appellee and Christopher Joles remained married throughout this time period.
On September 25, 1997, appellee contacted the probate court for the first time and provided an address where she could be reached. In a letter sent to the probate court, appellee indicated that she was never notified about the guardianship application, despite the fact that Christopher Joles and appellants supposedly knew of her whereabouts in 1992. Appellee further alleged in her correspondence to the probate court that she had been absent from Jeremy's life since 1988 when her husband and in-laws had "abducted" the child. Although she had not seen Jeremy for many years, appellee claimed that she became eligible for Social Security disability payments in the early 1990s and that she had arranged for such payments to be made directly to appellants so that the funds could be used for the care of her son.[1] Finally, appellee stated that she had been undergoing treatment for chronic clinical depression since the birth of Jeremy and that she now wished to establish visitation with her son.
Subsequently, on August 24, 1998, appellee filed a pro se
motion to terminate appellants' guardianship over Jeremy. The matter was referred to a magistrate pursuant to Civ.R. 53. The magistrate conducted a hearing on the motion to terminate on January 22, 1999. Appellee was present, but without representation, while appellants attended the proceeding with counsel.
During the hearing, appellee testified that she previously suffered from clinical depression brought on by chemical imbalances and that she had bounced from treatment centers to homeless shelters to hospitals. Appellee further testified that her efforts at rehabilitation had ultimately proven successful and that she had recovered to the point where she was fully capable of parenting Jeremy. Appellants did not testify, and counsel offered no arguments on their behalf.
On March 9, 1999, the magistrate issued a written decision, including findings of fact and conclusions of law, in which she recommended that appellee's motion to terminate the guardianship be denied. In doing so, the magistrate expressed the conclusion that terminating the guardianship would not be in Jeremy's best interest. Despite this, however, the magistrate acknowledged that appellee appeared to have made significant changes in her life which warranted a gradual, structured re-entry into Jeremy's life through planned visitation. In order to effectuate this plan, the magistrate recommended that the parties undergo psychological counseling and that a guardian ad litem be appointed to represent Jeremy. The costs associated with the psychologist and the guardian ad litem were to be split equally between appellee and appellants.
Both sides filed objections to the magistrate's decision. Appellee's objections lacked any real cogency because they were prepared without the benefit of counsel. Appellants objected to the psychological counseling component of the magistrate's order and the appointment of a guardian ad litem. Additionally, appellants voiced an objection to being forced to share in the costs of these measures. Neither appellee nor appellants filed a transcript of the proceedings conducted before the magistrate.
While the guardianship matter was pending in the probate court, the Domestic Relations Division of the Lake County Court of Common Pleas was going forward with divorce proceedings between appellee and Christopher Joles based on a complaint for divorce that had previously been filed by appellee. On March 16, 1999, the domestic relations court granted a final divorce. The divorce decree, however, did not contain any orders with respect to the custody of Jeremy, the only child born as issue of the marriage, because the domestic relations court recognized that he was a ward of the probate court.
Meanwhile, back in the probate court, a hearing was held on the objections to the magistrate's decision on April 23, 1999. Following this hearing, the probate court issued two judgment entries on April 30, 1999.
In the first entry, the probate court overruled the parties' objections as they related to any factual findings rendered by the magistrate. The probate court was authorized to take this action because the parties failed to file a transcript of the proceedings held before the magistrate, and Civ.R. 53(E)(3)(b) expressly requires that "[a]ny objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available." In light of this, the probate court adopted the findings of fact. The probate court, however, invoked its authority under Civ.R. 53(E)(4)(b) to reject the magistrate's conclusions of law pertaining to psychological counseling, the appointment of the guardian ad litem, and the introduction of a graduated visitation plan.
In the second entry, the probate court decreed that the guardianship was terminated. Upon doing so, the probate court declined to appoint a successor guardian, but instead found that Jeremy was without proper care and ordered that the record be certified to the Juvenile Division of the Lake County Court of Common Pleas for further proceedings. The termination of the guardianship was made effective upon the juvenile court's first entry after accepting certification of the case from the probate court.
From these judgments, appellants filed a timely notice of appeal with this court.[2] They now assert the following assignments of error:
 "[1.] The trial court erred to the prejudice of appellants in rejecting the magistrate's decision and terminating the guardianship of the person of the minor child.
 "[2.] The trial court erred to the prejudice of appellants in modifying the magistrate's decision by rejecting certain conclusions of law based upon the interpretation of new evidentiary matters outside the record."
 In their first assignment of error, appellants posit that the probate court erred by rejecting the magistrate's recommendation that the guardianship continue and, instead, ordering that such guardianship be terminated. From appellants' perspective, there was a failure of proof to warrant such action by the probate court. Specifically, appellants maintain that the record failed to disclose any evidence that the best interest of Jeremy would be served by terminating their status as his legal guardians.
Appellee is now represented by counsel on appeal. Through her counsel, appellee argues in response that the probate court was within its discretion to reject the magistrate's recommendation by ordering that the guardianship be terminated and that, upon doing so, the court was required by R.C. 2111.46 to certify the case to the juvenile court. Appellee further suggests that the question of whether Jeremy's best interest would be served by a change in custody is not before this court on appeal because the probate court did not make any judgment with respect to the best interest of the minor ward.
The initial issue that must be addressed is whether the probate court applied the proper test when adjudicating the motion to terminate the guardianship. Specifically, was the probate court required to apply the R.C. 3109.04 "best interest of the child" analysis governing motions to modify custody, or could the court limit itself to the "good cause" standard set forth in R.C.2111.46?
A guardian is a fiduciary who is appointed by, and therefore accountable to, the probate court. Indeed, it is well-settled that probate courts have exclusive, original jurisdiction over the appointment and removal of guardians.
R.C. 2111.46 governs the termination of a guardianship for a minor. It reads in part:
 "When a guardian has been appointed for a minor before such minor is over fourteen years of age, such guardian's power shall continue until the ward arrives at the age of majority, unless removed for good cause or unless such ward selects another suitable guardian."
 The express language in R.C. 2111.46 establishes a good cause standard for the removal of a minor ward's guardian. Despite this, appellants maintain that the probate court in the present case was required to engage in an analysis of the best interest of the child before terminating the guardianship pursuant to the decision of the Supreme Court of Ohio in Masitto v. Masitto (1986), 22 Ohio St.3d 63.
In Masitto, the Supreme Court recognized that the general rule in Ohio involving original custody awards is that parents who are deemed suitable have a "paramount" right to the custody of their minor children as against a nonparent. Masitto,22 Ohio St.3d at 65, citing In re Perales (1977), 52 Ohio St.2d 89,97. This right, however, is not absolute and can be forfeited by biological parents. Reynolds v. Goll (1996), 75 Ohio St.3d 121,123.
Parents may be found to have forfeited their paramount right to custody through contract, abandonment, or by becoming totally unable to care for and support their children. Masitto,22 Ohio St.3d at 65, citing In re Perales, 52 Ohio St.2d at 97. Once an original custody award has been made, parents who have relinquished custody must thereafter satisfy the "best interest of the child" test when attempting to modify the existing custodial arrangement. Masitto, 22 Ohio St.3d at 65. Whether or not a parent has relinquished his or her right to custody is a question of fact which, once determined, will be upheld on appeal if there is some reliable, credible evidence to support the finding. Id.
at 66, citing C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279.
Appellants also cite the decision of the Second District Court of Appeals in In re Guardianship of Sanders (1997),118 Ohio App.3d 606, as support for their position. In In re Sanders, the maternal grandmother had been appointed by the probate court as guardian for her granddaughter. Issues thereafter arose with regard to the natural mother's right to visit the child. As a result, the mother filed a motion to terminate the guardianship. Following a hearing, the probate court denied the motion after finding that there were no grounds for removing the grandmother as guardian and concluding that it was in the child's best interest to remain the ward of her grandmother.
On appeal, the Second District affirmed the probate court's judgment. In doing so, the court cited Masitto for the proposition that parents who have forfeited their paramount right to custody must thereafter meet the standards imposed by the best interest of the child test under R.C. 3109.04 when attempting to alter an established custody arrangement. In re Sanders,118 Ohio App.3d at 164.
Appellants urge this court to employ the analytical framework of In re Sanders, especially its reliance on Masitto, to resolve the instant appeal. Appellants take the position that by virtue of their appointment as co-guardians, they were essentially given custody of Jeremy. If the guardianship is to be terminated, appellants contend that custody considerations are necessarily implicated because they would no longer have a legal right to custody of Jeremy. From appellants' perspective, therefore, the issues of the guardianship and custody are "inextricably intertwined." See In re Guardianship of Wonderly
(1981), 67 Ohio St.2d 178, 183.
Upon review, it is obvious to this court that Masitto
and In re Sanders are distinguishable from the case at bar for at least two reasons. First, the natural parents in Masitto and Inre Sanders who were seeking to terminate the grandparent or grandparents' status as guardian(s) expressly consented to the original guardianship appointment in the first place.[3]
In the present matter, it is uncontroverted that appellee never signed the waiver of notice and consent. Appellee was never notified of the pending guardianship application in 1992 because Christopher Joles and appellants represented to the probate court that they did not know and could not ascertain her whereabouts. Indeed, the magistrate expressly noted this fact. In her written findings of fact, the magistrate observed that although Christopher Joles consented to the appointment of appellants as guardians and waived notice of the hearing, appellee "was not notified of the hearing as the [guardianship] application represented to the Court that her address was unknown." Subsequently, the probate court adopted the magistrate's factual findings, thereby bestowing the official judicial imprimatur on the finding that appellee never consented to the original guardianship appointment as was the case in both Masitto and In reSanders.
Second, the domestic relations court in Masitto and the probate court in In re Sanders each made an express finding on the record that the natural parent had specifically and voluntarily relinquished care and custody of his or her child by agreeing to the establishment of a permanent guardianship with the grandparent or grandparents serving as legal guardian(s) of the minor ward. In the case at hand, neither the probate court nor the magistrate ever made such a finding.
Indeed, this is the critical aspect of both Masitto andIn re Sanders, to wit: the trial court in each of those cases made an affirmative finding on the record that the natural parent had forfeited his or her paramount right to custody. This finding served as the impetus for applying the R.C. 3109.04 best interest test governing modifications to previously ordered custody arrangements.
In the appeal at bar, the probate court never found that appellee had forfeited her right to custody as a biological parent of Jeremy.[4] If the probate court had elected to make such a finding, then we would agree that the best interest test would have been triggered under the authority of the Supreme Court of Ohio's decision in Masitto.
The probate court, however, did not determine that appellee had forfeited her custodial rights as a parent. Thus, the probate court was under no duty to apply the best interest test of R.C. 3109.04. Instead, the probate court could terminate the guardianship based solely on the good cause standard mandated by R.C. 2111.46.
Although R.C. 2111.46 states that the guardian of a minor may be "removed for good cause," it does not elaborate on what constitutes such cause. In light of this, it has generally been held that a guardian may be removed for any good cause in the discretion of the probate court when the interests of the ward require it. See, e.g., In re Guardianship of Zornes (Aug. 4, 1997), Lawrence App. No. 96CA35, unreported, at 12, fn. 3, 1997 Ohio App. LEXIS 3549, citing 2 Merrick-Rippner Probate Law (1997) 98, Section 66.2. There is no requirement that a guardian must be shown to be "unfit" before such guardian may be removed for good cause. In re Spriggs (Apr. 24, 1990), Scioto App. No. 89-CA-1803, unreported, at 8, 1990 Ohio App. LEXIS 1638. The decision as to whether good cause exists for the removal of a guardian is within the sound discretion of the probate court. Id. at 7-8, citing Inre Henig (June 2, 1983), Cuyahoga App. No. 45601, unreported, 1983 WL 3065.
In the case sub judice, it is apparent that the probate court found good cause to terminate the guardianship based on the inability and/or unwillingness of appellants to cooperate with appellee in implementing a visitation plan. The animosity between appellants and appellee also formed the basis for the probate court's rejection of the recommendations of the magistrate to order a graduated visitation plan which would be fostered by psychological counseling and the appointment of a guardian adlitem.
The probate court did not abuse its discretion in this regard. Discord between the parties in implementing a visitation plan can constitute good cause for the termination of a guardianship.
Upon removing appellants as co-guardians, the probate court took the proper course of action. R.C. 2111.46 provides in relevant part:
 "Upon the termination of a guardianship of the person, estate, or both of a minor before such minor reaches eighteen years of age, if a successor guardian is not appointed and if the court finds that such minor is without proper care, the court shall certify a copy of its finding together with as much of the record and such further information as the court deems necessary, or as the juvenile court may request, to the juvenile court for further proceedings and thereupon such court shall have exclusive jurisdiction respecting such child."
 The probate court was statutorily required to certify the matter to the juvenile court because the removal of appellants as co-guardians left Jeremy without proper care. In the wake of the termination of the guardianship, the juvenile court is now charged with determining the care and custody of Jeremy. As a practical matter, therefore, appellants have not been precluded from arguing that the best interest of Jeremy would be served by allowing him to remain in their home. Appellants must simply present this argument to the juvenile court, not the probate court.
The probate court did not err by applying the good cause standard of R.C. 2111.46 when terminating the guardianship, as opposed to the best interest test of R.C. 3109.04. Likewise, the probate court did not abuse its discretion by finding good cause to remove appellants as co-guardians. Consequently, the first assignment is without merit.
In their second assignment of error, appellants propose that the probate court erred by rejecting the magistrate's recommendations based upon evidence outside of the record. Specifically, appellants maintain that the probate court was limited to an examination of the magistrate's findings of fact and conclusions of law in light of the fact that neither side filed a transcript of the proceedings held before the magistrate. According to appellants, the probate court improperly relied upon the rancorous "tenor" that prevailed during the hearing on the objections to the magistrate's decision as the sole basis for rejecting the recommendations that the guardianship continue in effect and that a graduated visitation plan be implemented.
Appellee contends that appellants are incorrect in asserting that the parties' lack of cooperation in implementing a visitation plan was established solely at the hearing on the objections to the magistrate's decision. In this regard, appellee cites two passages from the magistrate's findings of fact that reference the inability of the parties to negotiate a voluntary visitation schedule.
Upon review, we agree with appellee. It is obvious that the magistrate did make two different references in her findings of fact to the parties' failure to reach any sort of agreement regarding the reintroduction of appellee back into Jeremy's life through planned visitation. The two references read as follows:
 "It appears from the record that efforts between Mother and the Guardians to establish some type of visitation plan had not been successful. This finding is supported by the Mother's testimony.
"* * *
 "* * * The parties were encouraged by the Court to voluntarily negotiate a temporary visitation schedule pending this Court's ruling. They were unable to do so."
 As indicated earlier, the probate court adopted the magistrate's factual findings in their entirety. Thus, the record clearly demonstrates that the magistrate's findings of fact provided the probate court with a proper basis upon which the court could predicate its decision that the guardianship should be terminated. The second assignment is not well-taken.
Based on the foregoing analysis, the assignments of error lack merit. Accordingly, the judgment of the probate court is affirmed.
 _________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., O'NEILL, J., concur.
[1] This fact was subsequently confirmed by appellants' counsel. Although R.C. 2109.30 dispenses with the filing of an annual account by the guardian(s) of a person only, the probate court in the instant matter requires that a letter updating the status of the guardianship be filed with the court on a yearly basis. In a status letter filed with the probate court on November 5, 1997, appellants' counsel confirmed that Nancy Joles received monthly Social Security benefits as the representative payee of Jeremy.
[2] Appellee filed a motion to dismiss the appeal on the grounds that it was not a final appealable order and that it did not contain Civ.R. 54(B) language. This court overruled the motion to dismiss by judgment entry on November 19, 1999.
[3] In actuality, the appeal in Masitto was taken from a motion to modify custody filed in the domestic relations court, not a motion to terminate the guardianship filed in the probate court. This fact was the basis for a dissent in Masitto.
[4] On this point, we would note that competent, credible evidence may have existed upon which the probate court could have found that appellee had forfeited her right to custody. As indicated previously, the probate court adopted the findings of fact made by the magistrate. One of those factual findings was that appellee had not attempted to contact Jeremy for many years, even though at some point appellee became aware that her son was residing with appellants and despite the fact that appellants may have had some contact with or awareness of appellee and her location during this time period. Given this, the probate court could reasonably have drawn the inference that appellee relinquished custody of Jeremy through abandonment, but the court never found that appellee had forfeited her biological right to custody.