OPINION
{¶ 1} Daniel W. Miller, Jr., plaintiff-appellant, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, rendered June 5, 2002.
 {¶ 2} On July 3, 1997, appellant filed a complaint against Jenny Henry (nka Harrison), defendant-appellee, to establish the paternity of Jacob Henry, born June 13, 1997. At that time, both parties were residents of Ohio. On August 10, 1998, the court made an initial custody determination and retained continuing jurisdiction over custody matters pursuant to R.C. 3109.22. The parties agreed that appellee would continue to be the sole residential parent and legal custodian of Jacob, and appellant would have "phased-in" visitation beginning with four-hour visits and increasing up to a maximum of one overnight visit every other weekend. In December 1999, appellant filed a motion requesting the court to modify parental rights and responsibilities. In January 2000, appellee and Jacob moved to Tennessee as a result of appellee's husband obtaining a new job. On December 1, 2000, the parties filed an agreed entry regarding parental rights and responsibilities, in which it was agreed, among other things, that appellee would remain the residential and school placement parent and appellant would be allowed parenting time in accordance with Juv.R. 22 for parents traveling over 90 miles, with several accommodations. On October 25, 2001, appellee filed a petition for modification of a prior custody order in Tennessee. Appellant filed a motion to dismiss the action in Tennessee. The Tennessee court issued an order staying the proceedings pending a jurisdictional determination by the Franklin County court. On December 11, 2001, appellee filed a motion in Ohio to transfer venue to Tennessee. The trial court rendered a judgment granting the motion to transfer venue on June 5, 2002. Appellant appeals the trial court's judgment, asserting the following assignment of error:
 {¶ 3} "The trial court erred by granting Defendant's Motion to Transfer Venue and relinquishing its jurisdiction over this case allowing Tennessee to exercise exclusive jurisdiction under the Parental Kidnapping Prevention Act, 28 U.S. § 1738(A)."
 {¶ 4} Appellant argues in his first assignment of error the trial court erred when it granted appellee's motion to transfer venue and found that Franklin County, Ohio, was an inconvenient forum for determining parental rights and responsibilities. The trial court declined to exercise its jurisdiction based on the finding that the court was an inconvenient forum in accordance with R.C. 3109.25(C)(1) through (4). These provisions are part of the Uniform Child Custody Jurisdiction Act ("UCCJA"), which Ohio has adopted. R.C. 3109.25(C) provides as follows:
 {¶ 5} "In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account, but is not limited to, any of the following factors:
 {¶ 6} "(1) If another state is or recently was the child's home state;
 {¶ 7} "(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
 {¶ 8} "(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
 {¶ 9} "(4) If the parties have agreed on another forum that is no less appropriate."
 {¶ 10} The UCCJA contemplates that more than one state may meet the jurisdictional requirements; however, the purpose of the act is to limit jurisdiction, not to proliferate it. In re Wonderly (1981),67 Ohio St.2d 178, 184. The main concern is whether the forum exercising jurisdiction is in the best interest of the child. The best interest is served when the forum which has the optimum access to the relevant information concerning the child and family exercises jurisdiction. There must be maximum, not minimum, contact with the state. Id. at 184.
 {¶ 11} We first note that the fourth factor is not applicable, as the parties have not agreed on another forum that is no less appropriate. The first factor considers whether another state was recently the child's home state. In this case, Tennessee was Jacob's home state at the time of the hearing and had been for approximately two years and five months. Although appellant points out that Jacob lived in Ohio for two years and six months, about half of his life had been spent in Tennessee, and it is his current home state. This factor favors Tennessee.
 {¶ 12} The second factor considers if another state has a closer connection with the child and his family or with the child and one or more of the contestants. Jacob currently lives in Tennessee with appellee, appellee's husband, and appellee's three stepdaughters. Appellant contends Ohio has an equally strong connection with Jacob in that appellant lives in Ohio, as do both sets of Jacob's grandparents, a great grandmother, at least eight aunts and uncles, and at least eight cousins. However, as the trial court found, the future school Jacob would attend in Tennessee is the same as his stepsisters, and his relationship with his three stepsisters is very close. He also attends church in Tennessee with his mother, stepfather, and three stepsisters. Although Jacob has close connections with his father and extended family in Ohio, the trial court did not abuse its discretion in finding that Tennessee has a closer connection with Jacob, his stepfather and stepsisters, and appellee.
 {¶ 13} The third factor for a court to consider is if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state. Despite the existence of several personal relationships in Ohio, evidence regarding Jacob's present and future care, protection, training, and numerous personal relationships is more readily available in Tennessee. Sole access to Jacob's current medical, preschool, and future educational records is through Tennessee. Clearly this consideration weighs in favor of Tennessee. In sum, after examining all four factors outlined in R.C. 3109.25(C), while there are contacts with Ohio, we find the trial court did not abuse its discretion in finding these factors weighed heavily in favor of Tennessee.
 {¶ 14} However, appellant asserts the trial court abused its discretion by finding Tennessee to be a more convenient venue after failing to consider the factors enumerated in Zwissler v. Zwissler (Mar. 13, 1998), Montgomery App. No. 16483, and Willis v. Willis (1985),25 Ohio Misc.2d 1. In Zwissler, in addition to the factors in R.C. 3109.25, the court of appeals apparently considered: (1) whether the parent with whom the child relocated has submitted to the jurisdiction of the Ohio court since relocating and has recently agreed to the Ohio court's jurisdiction to determine matters involving the child; (2) whether the non-relocating parent has remained a resident of Ohio and has substantial visitation rights with the child; and (3) whether the non-relocating parent has consistently exercised or attempted to exercise his visitation rights, despite instances of interference with those rights by the relocated parent.
 {¶ 15} In Willis, the mother, who had relocated with the children to West Virginia, filed a motion to transfer venue in November 1984. The trial court found that because the court had been involved with the matter as recently as April 1984, when the parties entered into a consent order specifying visitation, it would be an abuse of discretion to transfer the matter to West Virginia. The court of appeals agreed with the trial court and found that because the parties had previously entered into a consent order with regard to custody and visitation, this raised a reasonable inference that the parties themselves considered the family ties with Ohio to be stronger.
 {¶ 16} We first note that no other appellate court in the state, including this court, has followed or cited Zwissler. Likewise, no other appellate court in the state, including this court, has cited Willis for the proposition urged by appellant. Zwissler and Willis are not binding upon this court or lower courts in this jurisdiction. On this basis alone, clearly the trial court could not be said to have abused its discretion in failing to consider the factors in Zwissler and Willis. Notwithstanding this fact, we find that Zwissler and Willis have little application to this case. With regard to the factors in Zwissler, appellant contends that after moving to Tennessee in January 2000, appellee submitted to this court's jurisdiction when she signed an agreed entry controlling child custody issues in December 2000. However, as appellee points out, it was appellant who initiated the action resulting in the December 2000 agreed entry. Appellant also claims that, as in Zwissler, appellee has interfered with his visitation rights. However, although appellant did file a contempt motion, there has been no finding by the trial court that appellee has interfered with visitation rights.
 {¶ 17} Further, Willis is distinguishable from the present case in two respects. In Willis, the parties had submitted to the jurisdiction of the court about six months prior to the motion to transfer jurisdiction filed by the relocated parent. In the present case, appellee's motion to transfer was filed over twelve months after the agreed entry was signed by both parties regarding parental rights and responsibilities. Obviously, the more remote the submission to jurisdiction becomes, the less relevant it becomes. We find no reasonable inference that the parties here considered the family ties with Ohio to be stronger than Tennessee. Further, in Willis, the court found that Ohio had at least equal family ties as compared to West Virginia, and there was substantial evidence available in Ohio concerning the children's care, protection, training and relationships, even though the children had another home state. To the contrary, in the present case, the trial court found that Tennessee has stronger family ties and better access to evidence regarding Jacob's care, protection, training, and relationships than Ohio. Therefore, we find Zwissler and Willis unpersuasive under the present circumstances.
 {¶ 18} Appellant also asserts the trial court's decision to relinquish jurisdiction, based upon a finding of a more convenient venue, contradicts the purpose of the Parental Kidnapping Prevention Act ("PKPA"), Section 1738A, Title 28, U.S.Code. The purpose of this PKPA provision is to protect the right of the state that issued the original child custody determination to exercise its continuing jurisdiction, and in doing so discourage forum shopping and continuing interstate controversies over child custody, avoid jurisdictional competition and conflict between state courts in matters of child custody and visitation, and curtail excessive relitigation of child custody matters. See Zwissler citing Mark L. v. Jennifer S. (1986), 133 Misc.2d 454,506 N.Y.S.2d 1020. Appellee, in the present case, has not violated the purpose or spirit of the PKPA. The PKPA specifically permits a court with continuing jurisdiction to relinquish jurisdiction to another court. See Section 1738A(f), Title 28, U.S.Code. Further, there is no allegation that appellee is forum shopping in an attempt to relitigate any custody issues to seek a more favorable outcome or that she relocated in an attempt to clandestinely abscond with the child or thwart visitation between the child and appellant. The situation here is precisely why parties in a custody matter may seek to litigate in a more convenient forum.
 {¶ 19} Appellant also argues that under the factors in R.C. 3109.25, every time a parent removes a child from Ohio, it ceases to be the most convenient forum. This is not true. There are numerous circumstances under which Ohio may remain the most convenient forum even after the child has relocated outside Ohio. See, e.g., In re Brame (Feb. 23, 2001), Montgomery App. No. 18290 ("Although Texas was the children's new state of residence, Ohio had a much closer connection at the time with the children and their family. Further, since the hearing was held only a few days after the move, no evidence would have existed in Texas about the children's present or future care, protection, training, and personal relationships. Instead, all the substantial and relevant evidence, including psychological testimony, was readily available in Ohio."); Mawhorr v. Mawhorr (Sept. 21, 1994), Allen App. No. 1-94-26 (although children resided in Indiana at the time the grandparents filed a motion to intervene, Ohio was the more convenient forum because the children and at least one contestant had significant connections with Ohio, and there was substantial evidence available in Ohio concerning the children's present or future care, protection, training and personal relationships). Although it is true that the longer the child remains in the relocated state, the less likely it is for Ohio to be the favored state under R.C.3109.25, it is also logical that under such circumstances, the jurisdiction should be transferred because of naturally increasing contacts with the other state. Appellant's argument in this respect is without merit. For the foregoing reasons, appellant's assignment of error is overruled.
 {¶ 20} Accordingly, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch is affirmed.
Judgment affirmed.
McCORMAC, J., and PETREE, P.J., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.