(901 P.2d 12)
No. 72,532

In the Matter of the Marriage of MANUEL L. OSBORNE, deceased, *Petitioner*, and PATRICIA OSBORNE, *Respondent/Appellee*, and SHARON OSBORNE, *Intervenor/Appellant*.

Opinion filed
July 28, 1995.

*Jennifer A. Wagle*, of Arn, Mullins, Unruh, Kuhn & Wilson, L.L.P., of Wichita, for appellant.

*Gary W. Owens*, of Legal Services of Wichita, for appellee.

Before BRAZIL, C.J., LARSON, J., and DANIEL L. LOVE, District Judge, assigned.

LOVE, J.: Sharon Osborne, widow of Manuel Osborne, appeals the district court's decision granting immediate custody of her stepchildren to their natural mother, Patricia Osborne, and declining to rule upon Sharon's motions to intervene and for custody. We reverse and remand with directions.

Manuel and Patricia Osborne were divorced in Kansas in 1987. Manuel and Patricia were awarded joint custody of their two minor children, with Patricia named as residential custodian. The children lived with Patricia in Maryland until the summer of 1993 when they came to Kansas for an extended visit with Manuel and his new wife, Sharon. In 1993, while the children were still in Kansas, Manuel and Patricia agreed to modify their custody arrangement so that Manuel had residential custody of the children.

Approximately nine months later, Manuel died. As the children's stepmother, Sharon filed a motion to intervene in the Osborne divorce case and a motion for custody. Sharon alleged that Patricia had voluntarily relinquished custody of the children to Manuel, that Patricia was unfit to have custody of the children, and that it was in the best interests of the children for them to remain with Sharon. The motions were set for hearing, and Sharon mailed notice to Patricia in Maryland.

One day later, on July 12, 1994, Patricia arrived in Kansas (presumably before receiving notice of Sharon's motions) and went to the court requesting immediate custody of the children. Sharon's motions were not scheduled to be heard until August 1, 1994. After speaking with Patricia ex parte, the court contacted Sharon's counsel and ordered counsel to appear in court for an immediate hearing on the issue of custody. Sharon could not be located and did not appear at the hearing.

After hearing argument from Sharon's counsel and from Patricia, pro se, the court found that "[Sharon] has no standing whatsoever in this divorce case" and told Sharon's counsel that "it was improper for you to file in the divorce action. If you wanted a Child in Need of Care action it should have been filed out in juvenile court under the juvenile code." The court ordered immediate custody of the children to Patricia and gave permission for her to take them back to Maryland. The court also ordered that, unless Sharon was willing to advance $5,000 to Patricia for her expenses in travelling to Kansas, all further custody proceedings were to be held in Maryland.

This court issued an order to the parties to show cause why the appeal should not be dismissed as interlocutory. Sharon argued that this court has jurisdiction to hear her appeal under K.S.A. 60-2102(a), which provides that "the appellate jurisdiction of the court of appeals may be invoked by appeal as a matter of right from: . . . (4) A final decision in any action, except in an action where a direct appeal to the supreme court is required by law." Sharon argues that by ordering immediate custody of the children to Patricia and declining to hear Sharon's motions, the district court rendered a final decision which is appealable to this court.

In addition, while the court technically declined to rule upon Sharon's motions, such an action is tantamount to a denial of Sharon's motions on the facts of this case. The court commented that Sharon had no standing in the divorce case and that she should have filed a child in need of care petition instead of attempting to intervene in the divorce case. These comments indicate that the court found Sharon should not be allowed to intervene; thus, it effectively denied her motion to do so. Because the denial of a motion to intervene is a final, appealable order under K.S.A. 60-2102(a)(4) (see *Albertson v. Travis*, 2 Kan. App. 2d 153, 576 P.2d 1090 [1978]), this court has jurisdiction to consider Sharon's appeal. See *Campbell American Legion v. Wade*, 210 Kan. 537, 502 P.2d 773 (1972).

Because the trial court effectively denied Sharon's motions by declining to rule upon them, the question before this court is whether the trial court abused its discretion in refusing to allow

Sharon to intervene and seek custody of the children in the divorce case.

Sharon recognizes the application of the parental preference doctrine in Kansas. *In re Guardianship of Williams*, 254 Kan. 814, Syl. ¶¶ 2, 3, 869 P.2d 661 (1994), succinctly explains that doctrine:

"It is a firmly established rule in this state that a parent who is able to care for his or her children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is in issue, is entitled to the custody of his or her children as against grandparents or others who have no permanent or legal right to the children's custody, even though at the time the natural parent seeks their custody such grandparents or others are giving the children proper and suitable care and have acquired an attachment for them."

"The best interests of the child test is the proper rule to apply as between the natural parents of a minor child or children when their custody is at issue. However, absent highly unusual or extraordinary circumstances, the best interests of the child test has no application in determining whether a parent, not found to be unfit, is entitled to custody as against a third-party nonparent."

Sharon argues that the district court should have allowed her an opportunity to prove that Patricia was unfit by intervening in the divorce case. She also alleges that highly unusual or extraordinary circumstances exist in this case, making the best interests of the child the proper test for determining who should have custody.

Regarding intervention, Sharon first argues that under K.S.A. 60-224, the district court should have allowed her to intervene in the divorce case either under subsection (a) as a matter of right or under subsection (b) permissively. Second, Sharon argues that by communicating with Patricia ex parte and ordering an immediate hearing regarding custody, the court violated Sharon's due process rights to notice and an opportunity to be heard. Third, Sharon argues that the court should have allowed her the opportunity to prove that Patricia was unfit and that the court erred in ruling that she should have filed a child in need of care petition to challenge Patricia's fitness. Sharon cites K.S.A. 60-1610(a)(4)(D), which provides that a court determining child custody in a divorce action is authorized to find that the child is a child in need of care and to order temporary custody to a nonparent if neither parent is fit.

In response, Patricia argues that Sharon does not meet the criteria for intervention under K.S.A. 60-224. She also argues that Sharon has no legal interest in, or right to custody of, the children; therefore, she is not entitled to the due process protections of notice and an opportunity to be heard. Finally, Patricia argues that the circumstances of this case do not constitute highly unusual or extraordinary circumstances under *Williams* and that neither *Williams* nor K.S.A. 60-1610(a)(4)(D) gives Sharon the right to attempt to prove Patricia's unfitness by intervening in the divorce case.

Before considering the relative merits of the parties' arguments, this court should consider the following provisions of the Uniform Child Custody Jurisdiction Act (UCCJA). K.S.A. 38-1310 provides:

"If the court learns . . . that a person not a party to the custody proceeding has physical custody of the child or claims to have custody or visitation rights with respect to the child, it shall order that person to be joined as a party and to be duly notified of the pendency of the proceeding and of such person's joinder as a party."

" 'Custody proceeding' includes proceedings in which a custody determination is one of several issues, such as an action for divorce or separation." K.S.A. 38-1302(c). "Physical custody" is defined as "actual possession and control of a child." K.S.A. 38-1302(h).

K.S.A. 38-1304 provides: "Before making a decree under this act, reasonable notice and opportunity to be heard shall be given to the contestants . . . and any person who has physical custody of the child."

In the instant case, Sharon was a person not a party to the custody proceeding who had physical custody of the children and claimed a right to legal custody based on Patricia's unfitness. Based on K.S.A. 38-1310 and 38-1304, the district court should have joined Sharon as a party and given her reasonable notice and an opportunity to be heard.

The only remaining question is whether the divorce action constituted a continuing "custody proceeding" in which Sharon had a right to intervene or to be joined as a party. This question involves the broader issues of the continuing effect of the custody provisions of a divorce decree and the district court's continuing jurisdiction

to modify those provisions after one of the parents dies. Both issues are addressed in an annotation in 39 A.L.R.2d 258. According to the annotation, Kansas adheres to the majority view that when a divorce decree gives custody to one parent and that parent dies, the right to custody automatically reverts to the surviving parent subject to the condition that he or she is a fit and suitable person to have custody. See *Purdy v. Ernst*, 93 Kan. 157, 143 Pac. 429 (1914); *Pinney v. Sulzen*, 91 Kan. 407, 137 Pac. 987 (1914). While the cases on this issue are old and were decided before joint custody became the preferred arrangement, the rule that the surviving parent automatically has custody would seem especially applicable in joint custody cases where both parents have had custody all along.

Kansas also adheres to the minority view that the divorce court has continuing jurisdiction to modify child custody provisions even after the death of the parent custodian. Annot., 39 A.L.R.2d 283. The *Purdy* court stated:

"The death of a party to the divorce action can not interfere with the power of the court to make suitable provisions for the custody of children as changed conditions may demand, and no revivor is necessary in order that such power may be called into exercise. . . . Persons claiming an interest in the custody of the children adverse to the motion to modify the original judgment should be notified, and they may appear and produce evidence, and may appeal, without the formality of an order making them parties to the litigation." 93 Kan. at 159-60.

In so holding, the *Purdy* court relied on a civil procedure statute which provided that a divorce court should make provisions for child custody and that the court " 'may modify or change any order in this respect whenever circumstances render such change proper.' " 93 Kan. at 159.

While the code of civil procedure has certainly been revised since 1914, the provisions regarding the continuing jurisdiction of a divorce court remain comparable. K.S.A. 60-1610(a)(2)(A) now provides: "Subject to the provisions of the uniform child custody jurisdiction act . . . the court may change or modify any prior order of custody when a material change of circumstances is shown." Thus, the *Purdy* reasoning still applies. The divorce court's

jurisdiction to modify a child custody decree survives the death of one the parties to the divorce decree.

The conclusion that Kansas continues to follow the minority rule is important when one compares the results in cases from states which follow the majority rule. Under the majority rule, a divorce court does not continue to have jurisdiction to provide for child custody after one of the parents dies. In states following this rule, courts have held that third parties such as grandparents or stepparents have no standing to intervene in a divorce action to seek custody after one parent has died. See, *e.g., Schumacher v. Schumacher,* 223 S.W.2d 841 (Mo. App. 1949). These courts have also held that the surviving natural parent need not seek a modification of the existing custody order because custody automatically reverts to the surviving parent. See, *e.g., Volz et ux. v. Abelsen,* 190 Or. 319, 224 P.2d 213 (1950). The appropriate remedy for a third party seeking custody is a suit in equity or a habeas corpus action.

Because Kansas follows the minority rule that a divorce court continues to have jurisdiction over custody matters after one parent dies, one would not expect Kansas courts to reach the same conclusions as in *Schumacher* and *Abelson.* Furthermore, because the court in the instant case had continuing jurisdiction over child custody matters, an ongoing custody proceeding existed for purposes of the UCCJA. Thus, Sharon was entitled to intervene or be joined as a party and to receive notice and an opportunity to be heard.

While no Kansas case has directly addressed the issue presented by the instant case, at least one case has tacitly approved of a stepmother's intervention in a divorce action, albeit in dicta. In *Selanders v. Anderson,* 178 Kan. 664, 291 P.2d 425 (1955), the Kansas Supreme Court held that a stepmother who had previously lost a custody battle for her stepchildren to their natural mother was enjoined from filing suit in a different county seeking to adopt the stepchildren. The court described the previous custody battle between stepmother and natural mother:

"In this case the father had been granted the custody of the minor children by the district court of Labette county and after his death, his widow, the stepmother of the children, went into the same court on motion and asked relief in the same divorce case where her deceased husband had been granted custody. This reo-

pened that case so far as the question of custody of the minor children was concerned. The trial court by statute had jurisdiction over the children so far as their guardianship, custody, support, and education were concerned, but appellant, the stepmother, also chose this forum in which to try the question whether she could remove the children from Labette county. Appellant later asked for custody to be granted to her.

"The trial court accepted and exercised jurisdiction over the parties and the subject matter. It granted custody to the mother and rights of visitation to the stepmother, who was also denied any rights to retain custody." 178 Kan. at 667.

While the propriety of the stepmother's involvement in the original divorce action was not at issue in *Selanders*, the court seems to approve the procedure used by the stepmother in contesting the natural mother's right to custody. In the instant case, Sharon attempted an identical approach, but the trial court refused to allow Sharon to intervene and present evidence regarding Patricia's fitness as a parent.

Because K.S.A. 38-1310 required the district court to join Sharon as a party to the custody proceeding, the court abused its discretion by refusing to allow Sharon to intervene. The court also abused its discretion by failing to give Sharon reasonable notice and an opportunity to be heard as required by K.S.A. 38-1304.

The district court also ruled that Maryland had jurisdiction to hear any further custody disputes between Sharon and Patricia. Sharon argues that the district court erred in so ruling because Kansas, and not Maryland, has jurisdiction under the UCCJA. Patricia argues that the district court properly declined jurisdiction under the inconvenient forum provisions of the UCCJA.

K.S.A. 38-1303 provides in relevant part:

"(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state (A) is the home state of the child at the time of the commencement of the proceeding . . . or

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

"Home state" is defined as "the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months." K.S.A. 38-1302(e).

Sharon argues that Kansas has jurisdiction to hear the custody dispute under either subsection (a)(1) or (a)(2) of K.S.A. 38-1303. At least under subsection (a)(1), she is correct. The children had lived in Kansas with their father Manuel and their stepmother Sharon for well over six months before the instant proceedings began.

Furthermore, K.S.A. 38-1335 provides:

"(a) The provisions of the uniform child custody jurisdiction act notwithstanding, the district court, having assumed jurisdiction to make a custody determination regarding a child, shall continue to have such jurisdiction until such time as a court of another state assumes jurisdiction to make a custody determination regarding such child."

However, a court may decline to exercise jurisdiction in certain situations. Patricia argues that the court properly declined jurisdiction under K.S.A. 38-1307, which provides:

"(a) A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

"(b) A finding of inconvenient forum may be made upon the court's own motion . . . .

"(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) If another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and the child's family or with the child and one or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in K.S.A. 38-1301."

At first glance this statute would appear to apply to the instant case. Maryland was recently the home state of the children; Patricia and the children had a significant connection with Maryland in that Patricia still lived there, and the children had spent most of their lives there; and substantial evidence concerning the children's *future* care, protection, training, and personal relationships was available in Maryland. Under K.S.A. 38-1307, the district court could have properly declined jurisdiction on the grounds that Kansas was an inconvenient forum.

The problem here is that the court did not decline jurisdiction because Kansas was an inconvenient forum and Maryland was a more convenient forum under K.S.A. 38-1307. What the court really did was assume jurisdiction long enough to order the children to Patricia's custody and then refuse to address Sharon's claim that Patricia was unfit, stating that she needed to bring such a claim in Maryland because Maryland had jurisdiction. K.S.A. 38-1307 provides that a court may decline jurisdiction because it is an inconvenient forum "any time *before* making a decree." (Emphasis added.) When a court finds it is an inconvenient forum, it may dismiss the proceedings or stay the proceedings until new proceedings are commenced in a more appropriate forum. K.S.A. 38-1307(e). The statute does not authorize the court to find that it has jurisdiction to rule on certain custody issues, enter a decree on those issues, and then decline jurisdiction to determine any other custody issues as the court did in this case.

The district court also ruled that Sharon could litigate custody in Kansas if she were willing to advance $5,000 to cover Patricia's expenses. Sharon argues that the court abused its discretion in so ruling because Kansas has jurisdiction under the UCCJA. Patricia argues that the court's ruling is supported by K.S.A. 38-1307(g), which provides:

> "If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses."

This statute does not authorize the court's action in this case for several reasons. First, it is questionable whether Sharon or Patricia

commenced the proceedings in Kansas. Arguably, both parties did so. Patricia voluntarily came to Kansas and went before the court seeking custody of her children. Additionally, Patricia was divorced from Manuel and obtained custody of the parties' children in Sedgwick County case 86-D-3464. She then relinquished custody of the children in the same case to Manuel. Under these circumstances, Sharon should not be required to pay Patricia's expenses solely because Sharon's involvement will make the proceedings longer than Patricia expected. Second, the facts of this case do not make Kansas a "clearly" inconvenient forum as required by the statute. While the court may, within its discretion, find that the case should be heard in Maryland, Kansas was the home state of the children when the proceedings began; therefore, instigating proceedings in Kansas was not so clearly inappropriate that Sharon should be required to pay Patricia's expenses. Third, the statute contemplates payment of expenses only *after* a party has instigated proceedings in an inconvenient forum and the court has declined jurisdiction. Because the court did not decline jurisdiction, as discussed above, the court abused its discretion in finding that it would only hear further custody issues if Sharon was willing to pay Patricia's expenses.

In hindsight, the district court should have allowed Sharon to intervene and given her the opportunity to contest Patricia's fitness before granting immediate custody of the children to Patricia. However, this court cannot turn back the clock and completely cure that error by restoring Sharon to the same position she held when these proceedings began. It would only compound the damage in this case to order that Patricia return the children to Sharon pending further proceedings when, presumably, the children have spent the last year in Maryland with their mother. Thus, the unfortunate result of the district court's error is that Sharon may well be forced to litigate the issue of Patricia's fitness in Maryland. However, Sharon will first have the opportunity to litigate in Kansas the issue of whether Kansas or Maryland is the appropriate forum in which to determine Patricia's fitness.

We reverse the district court's order denying Sharon the right to intervene and the opportunity to be heard and granting Patricia

immediate custody of the children. On remand, the district court may enter temporary custody orders as necessary. The district court is also instructed to join Sharon as a party to the custody proceeding and give her notice and an opportunity to be heard regarding whether Kansas is an inconvenient forum and regarding any temporary custody orders to be entered pending resolution of the inconvenient forum issue. The district court must decide whether Kansas is an inconvenient forum under K.S.A. 38-1307 after considering the facts as they now exist. If the court finds that Kansas is not an inconvenient forum, Sharon should be allowed the opportunity to present her claim of Patricia's unfitness. If the court finds that Kansas is an inconvenient forum, it should stay the proceedings until a custody proceeding is begun in Maryland. It must also comply with K.S.A. 38-1307(h) by informing the appropriate officials in Maryland of its findings.

Reversed and remanded with directions.