No. 85,352

VANITA RUTH WARD, *Petitioner*, v. STANLEY T. WARD, *Respondent/Appellee*. IN THE MATTER OF THE GUARDIANSHIP/ CUSTODY OF JACLYNN PAIGE WARD, a Minor, by and through her maternal aunt and uncle as next friend, STANLEY R. GATELEY and TINA GATELEY, *Petitioners/Appellants*, v. STANLEY T. WARD, DAVE WARD, and DONNA WARD, *Respondents/Appellees*. IN THE MATTER OF THE PETITION FOR APPOINTMENT OF GUARDIAN AND CONSERVATOR FOR JACLYNN WARD.

(30 P.3d 1001)

Opinion filed September 14 , 2001.

*Brenda J. Bell*, of Seaton, Miller, Bell & Seaton, LLP, of Manhattan, argued the cause, and *Charlene Brubaker*, of Clinkscales & Brubaker, P.A., of Hays, was with her on the brief for appellants.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chtd., of Norton, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

LARSON, J.: We begin our opinion, in this complex and troubling appeal involving the guardianship and custody of a now 7-year-old little girl, cognizant of the admonition of Chief Justice Frank D. Celebrezze of the Ohio Supreme Court in *In re Wonderly*, 67 Ohio St. 2d 178, 188, 423 N.E.2d 420 (1981), where in a contest over a guardianship, he said:

"While statutes can be amended and case law can be distinguished or overruled, we take judicial notice of the fact that children grow up only once. When a mistake is made in a custody dispute, the harmful effects are irrevocable."

The appeal presented to us is by the minor child's maternal uncle and aunt, Stanley R. Gateley and Tina Gateley, of Gilmore, Texas, who contend that the Kansas guardianship proceedings involving Jaclynn Paige Ward are jurisdictionally defective and a custody decree of an Oklahoma court must be recognized and enforced in Kansas against Dave Ward and Donna Ward who were designated guardians and conservators of Jaclynn Paige Ward by her father, Stanley T. Ward, when he moved her from Oklahoma to Kansas

following the death of her mother, Vanita Ruth Ward, in an accident.

*Statement of facts*

The following facts were stipulated by the parties in the trial court:

"1. Jaclynn Ward was born February 28, 1994, in Clinton, Custer County, Oklahoma, to Vanita Ruth Ward and Stanley T. Ward, and she resided in Weatherford, Custer County, Oklahoma, from the time of her birth until January 23, 2000.

"2. Vanita Ruth Ward and Stanley T. Ward were divorced in the District Court, 2nd Judicial District, Custer County, Oklahoma, Case No. FD-98-150 captioned, Vanita Ruth Ward vs. Stanley T. Ward.

"3. A Journal Entry of Judgment and Decree of Divorce was filed on October 21, 1999, in the Custer County, Oklahoma District Court Case No. FD-98-150, wherein the Court determined that Vanita Ruth Ward was a 'fit and proper person to be awarded exclusive care and custody of the minor child, [Jaclynn Paige Ward, born February 28, 1994] subject to [Stanley T. Ward's] restricted visitation rights. Said visitation was to be for a maximum of three afternoon visitations per week, each being a maximum of three (3) hours in length.'

"4. On January 11, 2000, Vanita Ruth Ward was killed in an accident.

"5. Thereafter, Jaclynn Ward remained in the physical custody of her grandmother, Georgia Gateley, and her maternal aunt and uncle, Tina Gateley and Stanley R. Gateley, in Weatherford, Oklahoma except for those periods of time when Stanley T. Ward had physical custody of her.

"6. After Vanita Ward's death on January 11, 2000, Stanley T. Ward had physical custody of Jaclynn Ward for 2 hours on January 13, 2000; for 2 hours on January 14, 2000; for 2 hours on January 16, 2000; and for 2 hours on January 19, 2000. On January 23, 2000 Stanley T. Ward stated that he wished to have physical custody of Jaclynn for 3 hours and the Gateleys agreed. Stanley T. Ward did not return Jaclynn Ward to the Gateleys at the end of 3 hours.

"7. On January 23, 2000, David and Donna Ward flew from Norton, Kansas, to Weatherford, Oklahoma, and returned to Norton, Kansas, with Stanley T. Ward and Jaclynn Ward.

"8. Stanley Ward resided in Weatherford, Oklahoma, as of January 24, 2000.

"9. On January 24, 2000, Stanley T. Ward as surviving natural guardian of Jaclynn Ward, filed a Petition in the District Court of Norton County, Kansas, Case No. 00-P-02, seeking to have David Ward and Donna Ward, his brother and sister-in-law, appointed as co-guardians and co-conservators of Jaclynn Ward. At the time, Jaclynn Ward was physically present in Norton County, Kansas and was in the physical custody of Stanley T. Ward. At this point, the Gateleys had filed nothing in Oklahoma.

"10. Notice of the hearing on the petition was never provided to Georgia Gateley, Tina Gateley or Stanley Gateley, after the Norton County District Court found no notice was necessary.

"11. The District Court of Norton County, Kansas, issued an Order Appointing David Ward and Donna Ward as Co-Guardians on January 24, 2000, in Norton County District Court Case No. 00-P-02. At the time, Jaclynn Ward was physically present in Norton County, Kansas and was in the physical custody of Stanley T. Ward.

"12. Letters of Guardianship were issued to David Ward and Donna Ward by the District Court of Norton County, Kansas, on January 24, 2000, in Norton County District Court Case No. 00-P-02. At the time, Jaclynn Ward was physically present in Norton County, Kansas and was in the physical custody of Stanley T. Ward.

"13. On January 25, 2000, the Norton County District Court issued an Order Nunc Pro Tunc in Case No. 00-P-02 correcting the spelling of the Ward s first name from 'Jacqueline' to 'Jaclynn.'

"14. On January 31, 2000, the Honorable Jacqueline P. Duncan, Judge of the District Court of Custer County, Oklahoma, conferred with the Honorable Wilda Brown, District Magistrate Judge of the Norton County, Kansas, District Court, and Judge Duncan advised Judge Brown that Oklahoma intended to retain its jurisdiction over Jaclynn Ward. Judge Brown refused to dismiss the Kansas guardianship proceeding.

"15. On February 29, 2000, Stanley R. Gateley, Tina Gateley and Georgia Gateley filed a 'Special Appearance and Petition to Dismiss for Lack of Jurisdiction and to Enforce Oklahoma Court Orders,' in Norton County District Court Case No. 00-P-02.

"16. On January 26, 2000, Stanley R. Gateley and Tina Gateley filed a Petition in the Custer County, Oklahoma District Court, Case No. PG-2000-3, seeking guardianship of Jaclynn Ward.

"17. On February 3, 2000, after giving notice to David Ward and Donna Ward, and after attempting unsuccessfully to give notice to Stanley T. Ward, the District Court of Custer County, Oklahoma, held a hearing in Case No. PG-2000-3 entitled, *In the Matter of the Guardianship/Custody of Jaclynn Paige Ward, a minor, by and through her maternal aunt and uncle as next friend, Stanley R. Gateley and Tina Gateley, Plaintiff, vs. Stanley T. Ward, Dave Ward and Donna Ward, Defendants* ('the Oklahoma guardianship proceedings') and granted co-guardianship of Jaclynn Ward to Stanley R. Gateley, Tina Gateley and Georgia Gateley. Stanley T. Ward, Dave Ward and Donna Ward appeared at the hearing specially for purposes of objecting to Oklahoma's jurisdiction and arguing a motion to dismiss filed with the Custer County, Oklahoma District Court on February 3, 2000, which motion was denied.

"18. In February 29, 2000, Stanley R. Gateley caused a certified copy of the Order issued in the Oklahoma guardianship proceedings, Custer County

Oklahoma, Case No. PG-2000-3, to be filed in the District Court of Norton County, Kansas, as Case No. 00-D-20.

"19. On March 3, 2000, Stanley T. Ward, Dave Ward and Donna Ward filed an appeal to the Oklahoma Supreme Court appealing the court's ruling in Custer County, Oklahoma, Case No. PG-2000-3.

"20. On March 7, 2000, Stanley T. Ward, Dave Ward and Donna Ward filed a Motion to Cancel Registration of Out of State Custody Decree and/or to Stay Enforcement thereof in Norton County District Court Case No. 00-D-20.

"21. On February 29, 2000, Stanley R. Gateley caused a certified copy of the Journal Entry of Judgment and Decree of Divorce issued by the Custer County, Oklahoma District Court, Case No. FD-98-150, to be filed in the District Court of Norton County, Kansas, as Case No. 00-D-19.

"22. On March 7, 2000, Stanley Thomas Ward, David Stephen Ward and Donna Marie Ward filed a Motion to Cancel Registration of Out of State Custody Decree and for Stay of Enforcement in Norton County, Kansas, District Court Case No. 00-D-19."

## The trial court in an additional finding added:

"24. Although not a stipulated fact, the Court notes from the Order issued by the District Court of Custer County, Oklahoma, in Case No. PG-2000-3 that the Petitioners, Stanley R. Gateley and Tina Gateley are residents of Gilmore, Texas, who in said case prayed for an order for the immediate custody of Jaclynn Paige Ward."

It is not a part of the record below and was objected to by the Gateleys, but it was stated at oral argument that Stanley T. Ward was at that time a resident of Norton County, Kansas. This is not considered in our decision.

The Gateleys filed a supplement to their brief pursuant to Kansas Supreme Court Rule 6.09 (2000 Kan. Ct. R. Annot. 41), objected to by the Wards, setting forth the opinion of the Oklahoma Supreme Court dated May 8, 2001, in the case captioned *S.W. v. Duncan*, 24 P.3d 846 (Okla. 2001).

### *Trial court's conclusions of law and findings*

After receiving briefs and replies, and hearing arguments from the parties, the trial court rendered a written opinion which concluded that, as stated in *In re Marriage of Osborn*, 21 Kan. App. 2d 374, 379, 901 P.2d 12 (1995), Kansas recognizes the parental preference doctrine and holds that "when a divorce decree gives custody to a parent who dies, the right of custody automatically

reverts to the surviving parent subject to the condition that he or she is a fit and suitable person to have custody." Further, *Turley v. Turley*, 638 P.2d 469, 470 (Okla. 1981), was relied on for the Oklahoma rule that "[u]pon the death of the parent into whose custody children are placed by a decree of divorce, the children stand, with relation to the surviving parent and all the world, as if no decree of divorce had been entered."

Although the Wards argued, as they do on appeal, that the Uniform Child Custody Jurisdiction Act (Furse 1993) (UCCJA), K.S.A. 38-1301 *et seq.*, did not apply to these proceedings, the trial court found that it did apply to the Kansas guardianship proceedings.

The trial court then quoted the provisions of K.S.A. 38-1303 (Furse 1993) and stated a conflict between two opposing custody decrees is averted by the priority-of-filing rule of the UCCJA and the second court must yield jurisdiction to the court in which a custody action was pending first (citing Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA*, 14 Fam. L. Q. 203 [1981]).

The court then concluded that upon the death of Vanita Ruth Ward, the sole legal custody of Jaclynn Ward immediately and automatically vested in Stanley T. Ward, her surviving father, without any requirement of legal action and that he had the legal right to take his daughter anywhere he chose without legal notice to or the legal consent of anyone.

The trial court found that while Oklahoma had jurisdiction under the UCCJA as the child's "home state," Kansas also had jurisdiction under the "more appropriate forum" and "significant connection" provisions of the UCCJA. When the petition was filed in the District Court of Norton County, Kansas, on January 24, 2000, by Stanley T. Ward, seeking the appointment of his brother and sister-in-law, David Ward and Donna Ward as co-guardians and co-conservators of Jaclynn Ward, there were no proceedings pending in Oklahoma; the court found this resulted in Kansas issuing the initial decree, and under the holding of *In re Marriage of Moser*, 251 Kan. 490, 836 P.2d 1158 (1992), and because of its initial custody decree, Kansas would have continuing exclusive jurisdiction.

The court also found that the Oklahoma judge who presided over the guardianship proceedings filed in the District Court of Custer County, Oklahoma, on January 26, 2000, failed to have an appropriate conference as required by the UCCJA. Specifically, the court held that while the Oklahoma judge advised that Oklahoma intended to retain jurisdiction, there was no stipulation in the record that the Oklahoma judge made an effort to determine if Kansas had assumed jurisdiction in substantial conformance with the UCCJA or considered the issue of which state was "the more appropriate forum"; thus, that issue was never determined.

Focusing on the more appropriate forum issue, the trial court noted that the residence of the paternal aunt and uncle was in Kansas, the residence of the maternal aunt and uncle was in Texas, and the lawful wishes of the minor's father who had sole legal custody of her should be followed. The court expressed that Kansas had "available substantial evidence concerning her future care, protection, training and personal relationships." The court further stated: "There [were], therefore, maximum, as opposed to minimum, contacts with the State of Kansas." The court noted this case was dissimilar to proceedings between competing parents where current information from Oklahoma would be important.

The trial court held that the District Court of Norton County properly exercised subject matter jurisdiction and appointed the Wards as co-guardians and co-conservators, denied the Gateleys' motion to dismiss for lack of jurisdiction and to enforce the Oklahoma court orders, and granted the Wards' motion to cancel the registration of the Oklahoma custody decree.

Following this order, the Gateleys moved for reconsideration, pointing out that the Oklahoma custody order awarded physical custody to the grandmother, Georgia Gateley, not the maternal uncle and aunt; the court failed to consider the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A (1994); and the Oklahoma proceedings were on appeal regarding the application of the Oklahoma Uniform Child-Custody Jurisdiction and Enforcement Act, Okla. Stat. Marriage and Family 43, § 551-101 et seq. (1988) and the Turley case. This motion was denied by the

court in an order dated May 15, 2000, stating that it had considered the PKPA.

The notice of appeal filed herein is by Stanley R. Gateley and Tina Gateley, who state they appeal only the memorandum decision of the trial court entered and filed April 18, 2000.

Our jurisdiction is pursuant to K.S.A. 20-3018(c) (transfer from Court of Appeals on our own motion).

*Issues raised by the parties on appeal*

The Gateleys outline their arguments by providing an overview of child custody law and then contend (1) guardianship proceedings are subject to the UCCJA, (2) Kansas cannot acquire home state jurisdiction by significant connections or abandonment, (3) Kansas lacks subject matter jurisdiction which cannot be waived, (4) the Kansas court erred by not requiring the disclosure and notice requirements of the UCCJA in the guardianship proceedings below, (5) Oklahoma has exercised jurisdiction in compliance with the UCCJA, and (6) the Kansas court erred by failing to consider the PKPA when interpreting the UCCJA.

The Wards respond by phrasing the issues as (1) Did the trial court err in its application of the Kansas UCCJA? and (2) Did the trial court err in its application of the PKPA?

*Standard of review*

Appellate courts have de novo review of cases decided on the basis of documents and stipulated facts. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, Syl. ¶ 1, 744 P.2d 840 (1987).

We have likewise stated that when issues of statutory construction are involved, these are questions of law over which we have unlimited review. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

In construing the statutes in issue, we refer to certain basic rules of statutory construction by which we are bound:

"It is a fundamental rule of statutory construction, to which all other rules are subordinate that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted." *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

"In order to ascertain the legislative intent, courts are not permitted to consider only certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia.*" *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975).

"When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment. [Citations omitted.]" *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990).

*Do the provisions of the UCCJA apply to this Kansas guardianship proceeding?*

The Gateleys argue that by failing to cross-appeal the trial court's application of the UCCJA, the Wards have abandoned their contention at the trial court that it does not apply to the facts of this case. Examination of the Wards' arguments in the trial court and in their brief on appeal show they have not abandoned this contention at any time during these proceedings. We must first determine if the UCCJA applies to the Kansas guardianship proceedings under the facts of this case, and only if it does, are we then required to determine if it has been properly applied by the trial court.

The statutory provisions by which guardians and conservators are appointed in Kansas are set forth in K.S.A. 59-3001 *et seq.*, and the following specific provisions apply:

A "natural guardian" of a minor may be either the father or the mother but "[i]f either parent of a minor dies, has been found to be a disabled person or has had parental rights terminated by a court of competent jurisdiction, the other shall be the natural guardian." K.S.A. 2000 Supp. 59-3002(e). Stanley T. Ward was clearly the natural guardian of Jaclynn Ward at the time the guardianship and conservatorship proceedings were instituted in Norton County, Kansas, on January 24, 2000.

K.S.A. 59-3003 states: "A natural guardian shall have the right to the custody of the natural guardian's minor child and the right to exercise control over the person of the natural guardian's minor child as provided by law, unless a guardian has been appointed for the minor." Stanley T. Ward was exercising these rights.

The provision of greatest interest is K.S.A. 1999 Supp. 59-3009, which relates to the contents of the application for the appointment of a guardian or conservator. At the time of the Kansas appointment, it stated: "(a) Any person may file in the district court of the county of the residence or presence of the proposed ward a verified petition for the appointment of a guardian." The requirements for the petition were contained in subsection (b):

"(b) If the proposed ward or proposed conservatee is alleged to be a minor the petition shall state:

(1) The proposed ward or proposed conservatee is a minor;

(2) the name, age, residence and present address of the proposed ward or proposed conservatee, if known to the petitioner;

(3) the name and address of the natural guardian, guardian, conservator and custodian, if any, of the proposed ward or proposed conservatee, if known to the petitioner, and if not known that the petitioner has made diligent inquiry to learn their names;

(4) the general character and probable value of the real and personal property, including the amount and sources of income, of the proposed ward or proposed conservatee, if known to the petitioner;

(5) the names and addresses of witnesses by whom the truth of the petition may be provided;

(6) the reasons for the need for the appointment of a guardian or conservator, or both;

(7) a request that the court make a determination that the proposed ward or proposed conservatee is a minor, make one or more of the orders provided for by K.S.A. 59-3010 and 59-3011 and amendments thereto, and appoint a guardian or a conservator, or both; and

(8) the name, address, and relationship to the proposed ward or proposed conservatee, if any, of the person whom the court is requested to appoint as a guardian or as a conservator."

It is significant that when the Kansas guardianship proceedings were initiated, there was not an express statutory reference by the UCCJA to the guardianship provisions, nor did the guardianship provisions make the UCCJA a part of, involved in, or related to the contents of the application for appointment of a guardian or a conservator.

This is of upmost importance as we consider whether the UCCJA applied to the guardianship proceedings in the present case because the 2000 Kansas Legislature enacted the Kansas Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA)

as sections 31 through 72 of House Substitute for Senate Bill No. 150. See L. 2000, ch. 171, § § 31-72; K.S.A. 38-1336 *et seq.* Part of this enactment amended K.S.A. 1999 Supp. 59-3009(b) as it relates to the contents of a petition for appointment of a proposed ward or conservatee:

"(b) If the proposed ward or proposed conservatee is alleged to be a minor the petition shall state:

(1) The proposed ward or proposed conservatee is a minor;

(2) the name, age, residence and present address of the proposed ward or proposed conservatee, if known to the petitioner;

*(3) the information required including that information required by section 51, and amendments thereto, if the petition seeks appointment of a guardian for the minor;*

~~(3)~~ (4) the name and address of the natural guardian, guardian, conservator and custodian, if any, of the proposed ward or proposed conservatee, if known to the petitioner, and if not known that the petitioner has made diligent inquiry to learn their names;

~~(4)~~ (5) the general character and probable value of the real and personal property, including the amount and sources of income, of the proposed ward or proposed conservatee, if known to the petitioner;

~~(5)~~ (6) the names and addresses of witnesses by whom the truth of the petition may be provided;

~~(6)~~ (7) the reasons for the need for the appointment of a guardian or conservator, or both;

~~(7)~~ (8) a request that the court make a determination that the proposed ward or proposed conservatee is a minor, make one or more of the orders provided for by K.S.A. 59-3010 and 59-3011 and amendments thereto, and appoint a guardian or a conservator, or both; and

~~(8)~~ (9) the name, address, and relationship to the proposed ward or proposed conservatee, if any, of the person whom the court is requested to appoint as a guardian or as a conservator." L. 2000, ch. 171, § 77; K.S.A. 2000 Supp. 59-3009.

This provision became effective July 1, 2000, but did not apply as of the date of the petition in issue in the instant appeal.

The provisions of K.S.A. 38-1356 which replaced the UCCJA and are now part of the UCCJEA read as follows:

"(a). Subject to subsection (e), in a child-custody proceeding, each party, in its first pleading or in an attached affidavit, shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period. The pleading or affidavit must state whether the party:

(1) Has participated, as a party or witness or in any other capacity, in any other proceeding concerning the custody of or visitation with the child and, if so, identify the court, the case number, and the date of the child-custody determination, if any;

(2) knows of any proceeding that could affect the current proceeding, including proceedings for enforcement and proceedings relating to domestic violence, protective orders, termination of parental rights, and adoptions and, if so identify the court, the case number, and the nature of the proceeding; and

(3) knows the names and addresses of any person not a party to the proceeding who has physical custody of the child or claims rights of legal custody or physical custody of, or visitation with, the child and, if so, the names and addresses of those persons.

"(b) If the information required by subsection (a) is not furnished, the court, upon motion of a party or its own motion, may stay the proceeding until the information is furnished.

"(c) If the declaration as to any of the items described in subsection (a)(1) through (3) is in the affirmative, the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath as to details of the informant furnished and other matters pertinent to the court's jurisdiction and the disposition of the case.

"(d) Each party has a continuing duty to inform the court of any proceeding in this or any other state that could affect the current proceeding.

"(e) If a party alleges in an affidavit or a pleading under oath that the health, safety, or liberty of a party or child would be jeopardized by disclosure of identifying information, the information must be sealed and may not be disclosed to the other party or the public unless the court orders the disclosure to be made after a hearing in which the court takes into consideration the health, safety, or liberty of the party or child and determines that the disclosure is in the interest of justice."

It is now clear that from and after July 1, 2000, the above provision of the UCCJEA statutorily applies to and must be a part of the contents of a Kansas guardianship petition and proceeding. No such reference previously existed as to the UCCJA, and, based on the statutory construction rules that we have previously set forth, "[w]hen the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment." *Hughes*, 247 Kan. at 414. The UCCJA was not part of or applied to Kansas guardianship provisions prior to July 1, 2000. At the time the UCCJA was enacted in Kansas, the guardianship provisions were already in existence. Had the legislature intended the UCCJA to apply to guardianships, it could have done

so. This legislative failure to do so is strong evidence that the UCCJA did not apply to Kansas guardianship proceedings prior to July 1, 2000.

While the presumption regarding legislative change is a strong indication as to what the previous law was in Kansas, it can be argued that the enactment of the UCCJEA and the amendments now contained in K.S.A. 2000 Supp. 59-3009 did nothing more than recognize statutorily our existing law that the UCCJA applied to Kansas guardianship proceedings. Before resolving this question, we return to the Kansas guardianship provisions to determine whether they were properly applied in this case.

If the UCCJA does apply to our facts, then a different notice requirement might exist; however, if it does not apply, K.S.A. 2000 Supp. 59-3010(b) states: "If the petition is filed on behalf of the minor by . . . the natural guardian of the minor [which it was in this case], the time of the hearing designated in the order may be forthwith and without notice." It is then apparent that the immediate hearing on the application of Stanley T. Ward was statutorily authorized and the immediate appointment was proper.

Finally, it was also proper for the appointees to be parties designated by the minor's natural guardian, as K.S.A. 2000 Supp. 59-3014(a) states:

"[T]he court in appointing a suitable guardian or conservator shall give priority in the following order:

(1) To the nominee of a minor over the age of 14 years who is not a disabled person.

(2) to the nominee of a natural guardian [applicable to our facts and justifying the Donna and Dave Ward appointment as designated by the natural guardian, Stanley T. Ward]."

From our foregoing discussion, it is apparent that the Kansas guardianship provisions *were* properly followed and the appointment of the Wards was proper unless the intervention of the UCCJA makes those proceedings subject to all of its provisions.

The most important part of the factual scenario in this case is that this is not a contest involving two living parents, and all of the cases and statutory provisions which have involved or construed such situations are simply not applicable to our set of facts.

While the Gateleys argue that in every decided case the UCCJA has been applied to guardianship situations, an examination of cases from other states show that factual, statutory, and rule differences exist where such holdings have been made. For example, see *Ray v. Ray*, 494 So. 2d 634, 637 (Ala. Civ. App. 1986) (UCCJA held applicable to guardianship proceeding in Georgia where living mother and father were involved in a custody determination); *In re Wonderly*, 67 Ohio St. 2d 178, 423 N.E.2d 420 (1981) (UCCJA applicable to guardianship proceeding, where grandparents attempted custody change 9 years after surviving parent's testamentary designation of children's custody); *Matter of Guardianship of Walling*, 727 P.2d 586, 590 (Okla. 1986) (UCCJA applicable to guardianship proceedings because Oklahoma District Court Rule 8.2 so states); *Gribkoff v. Bedford*, 76 Or. App. 695, 711 P.2d 176 (1985) (UCCJA applied to guardianship proceedings where neither mother or father were caring for child who was being raised by maternal and paternal grandparents who resided in separate states); *In Interest of A.E.H.*, 161 Wis. 2d 277, 468 N.W.2d 190 (1991) (Wisconsin guardianship was a custody proceeding under UCCJA but California had relinquished jurisdiction and Wisconsin assumed jurisdiction). In addition, the Missouri Court of Appeals in *In re Estate of Patterson*, 652 S.W.2d 252 (Mo. App. 1983), held that under specific state statutes the UCCJA was deemed to apply to appointments of a guardian of the persons but not to a guardian of the estate of two minor children. Also see Annot., *Applicability of UCCJA or PKPA*, 78 A.L.R.4th 1028.

In light of the specific changes in the laws of Kansas to make guardianship proceedings subject to the UCCJEA subsequent to July 1, 2000, and the clearly different reasons which appear to be the basis for the decisions in other states, we hold the UCCJA was not applicable to Kansas guardianship proceedings at the time the proceedings in this case were instituted.

Furthermore, the Kansas cases relied on by both sides to this appeal are not definitive of the question of whether the UCCJA must be applied to Kansas guardianship proceedings in this case.

The Gateleys' reliance on *In re Marriage of Mosier*, 251 Kan. 490, 836 P.2d 1158 (1992), and *In re Marriage of Harris*, 20 Kan.

App. 2d 50, 883 P.2d 785, *rev. denied* 256 Kan. 995 (1994), is misplaced. In both cases both parents were still living and the analysis therein is simply not applicable to our factual situation.

Likewise, the Wards' contention that *In re Stremel*, 233 Kan 136, 660 P.2d 952 (1983), and *In re Miller*, 228 Kan. 606, 620 P.2d 800 (1980), support their argument that the UCCJA does not apply to the guardianship proceedings under the facts of this case is not persuasive. Neither case related to the applicability of the UCCJA. *Stremel* involved issues of venue between two Kansas district courts and *Miller* involved an adult ward.

The precise questions which faced the Court of Appeals in *In re Marriage of Osborne*, 21 Kan. App. 2d 374, 901 P.2d 12 (1995), are not before us, and we decline to comment on the holding therein which involved a conflict between a surviving mother and a stepmother. The case is not dispositive on the question of applying the UCCJA to guardianship proceedings, and we reject the Wards' suggestion that the time Jaclynn Ward has been in Kansas should be considered in rendering our decision.

None of the Kansas cases have sufficient applicability to change or alter our conclusion that the legislative change making the UCCJEA applicable to guardianship provisions made by the 2000 Kansas Legislature recognized and confirmed that the UCCJA did not apply to Kansas guardianship proceedings prior to July 1, 2000.

Our decision that the UCCJA did not apply to the guardianship and conservatorship proceedings in this case requires that the trial court be affirmed if its ruling is correct for any reason even though it relied upon the wrong ground or assigned erroneous reasons for its decision. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 118, 936 P.2d 714 (1997).

The result we reach is not altered or changed by the decision of the Oklahoma Supreme Court in *S.W. v. Duncan*, 24 P.3d 846 (Okla. 2001), involving the parties to our appeal. That opinion appears to have recast its previous ruling in *Turley v. Turley*, which, at the time Stanley T. Ward removed his daughter from the State of Oklahoma, relied on *Ingles v. Hodges*, 562 P.2d 845 (Okla. 1977) to hold:

"Upon the death of the parent into whose custody children are placed by a decree of divorce, the children stand, with relation to the surviving parent and all the world as if no divorce had been entered." *Turley*, 638 P.2d at 470.

The *S.W. v. Duncan* opinion further stated: "We thus agree that father obtained custody rights of his child upon the death of the custodial parent." 24 P.3d at 851-52. We therefore hold that the natural guardian of the minor had lawful custody of the minor when she was moved to Kansas and when the guardianship and conservatorship proceedings were commenced. The district court of Norton County, Kansas, properly exercised jurisdiction in this case and in appointing the designees of the natural father (the Wards) as guardians and conservators; it properly denied the maternal uncle and aunt's motion to dismiss for lack of jurisdiction and to enforce Oklahoma court orders; and it properly granted the paternal uncle and aunt and natural father's motion to cancel the registration of the Oklahoma custody decree.

The issues were different, but we have said in other cases that "child custody is a fundamental right of a parent, protected by the due process clause of the Fourteenth Amendment." *In re Guardianship of Williams*, 254 Kan. 814, 819-20, 869 P.2d 661 (1994), citing *Sheppard v. Sheppard*, 230 Kan. 146, 630 P.2d 1121 (1981), *cert. denied* 455 U.S. 919 (1982). While we cannot undo the bitterness of a divorce or the tragic accidental death of a mother, the result we reach allows the surviving parent and natural guardian to control the future care, protection, training, education, and nurturing of his minor child.

Based on what we have said and held, it is clear the PKPA is not applicable in this case and the trial court properly so held. We need not reach or comment on other arguments raised by the Gateleys.

Affirmed.